**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Vance E. MARTIN, Defendant–Appellant.**

**No. 98CA0764.**

Colorado Court of Appeals, Division V.

May 13, 1999.

As Modified on Denial of Rehearing July 1, 1999.

Certiorari Granted Nov. 1, 1999.

920

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Dawn M. Weber, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Nancy J. Lichtenstein, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Vance E. Martin, appeals the trial court's order denying his Crim. P. 35(c) motion for post-conviction relief. We affirm.

Pursuant to a plea agreement, defendant entered a plea of guilty to one count of sexual assault on a child by one in a position of trust. Defendant's admission was for an act committed between July 1 and July 31, 1993.

In exchange for the guilty plea, the prosecutor dismissed all remaining charges. The plea agreement also provided that defendant would not be sentenced in the aggravated range or pursuant to the Sex Offenders Act, § 16–13–201, et seq., C.R.S.1998.

The trial court sentenced defendant to a six-year prison term. However, it suspended the sentence and imposed a conditional sentence of five years on probation.

Approximately eighteen months later, defendant violated the conditions of his probation. Following a revocation hearing, the trial court revoked defendant's probation, but it then reinstated the sentence on the condition that defendant serve ninety days in the county jail, with work release granted.

After his release, defendant again violated the conditions of his probation. This time, the parties reached a new plea agreement whereby defendant admitted the most recent probation violation, and the prosecutor agreed to recommend that defendant be sentenced to four years in the Department of Corrections (DOC). The trial court accepted the plea and immediately sentenced defendant to a four-year prison term. It also imposed a five-year term of mandatory parole, pursuant to § 18–1–105(1)(a)(V)(C), as then in effect. See Colo.Sess. Laws 1993, ch. 322, § 18–1–105(1)(a)(V)(C) at 1998.

In defendant's Crim. P. 35(c) motion, he asserted that he had not been advised he would be required to serve a term of mandatory parole and that its addition resulted in a total sentence in excess of the four-year sentence to which he had agreed. In addition, defendant claimed that counsel's failure to advise him of mandatory parole constituted ineffective assistance of counsel, and he raised several other constitutional claims. As a remedy, defendant sought to have his total sentence, including parole, reduced to four years, to comport with the terms of the most recent plea agreement.

Without holding a hearing, the trial court denied defendant's motion. This appeal followed.

## I.

Defendant first contends that because he was convicted of a sex offense, he was subject only to discretionary parole under § 17–2–201(5)(a), C.R.S.1998, rather than mandatory parole under § 18–1–105(1)(a)(V), C.R.S. 1998. We disagree.

### A.

At the outset, we note that because defendant did not raise the same legal issue in the Crim. P. 35(c) proceedings, we would ordinarily not review it on appeal. Nevertheless, in arguing on appeal that the imposition of mandatory parole was illegal, his challenge is in the nature of a motion under Crim. P. 35(a). Because a court pursuant to Crim. P. 35(a) may correct an illegal sentence at any time, and because defendant raises a question involving fundamental rights, we elect to address the merits of the argument. See Mulkey v. Sullivan, 753 P.2d 1226 (Colo.1988); Armstrong v. People, 701 P.2d 17 (Colo.1985).

### B.

At the time of defendant's conviction, the statutory provision on which he now relies, § 17–2–201(5)(a), provided in pertinent part:

As to any person sentenced for conviction of … a sex offense … *the [state parole board] has the sole power to grant or refuse to grant parole and to fix the condition thereof and has full discretion to set the duration of the term of parole granted,* but in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court or five years, whichever is less.

*See* Colo.Sess. Laws 1979, ch. 157, § 17–2–201(5)(a) at 667 (emphasis added).

In contrast, § 18–1–105(1)(a)(V)(C), specifically applied to sex offenders and provided as follows:

Notwithstanding sub-subparagraph (A) of this subparagraph (V) [which applies to felonies committed on or after July 1, 1993], *the mandatory period of parole for a person convicted of a felony offense pursuant to part 4 of article 3 of this title, or part 3 of article 6 of this title, shall be five years.* (emphasis added)

*See* Colo.Sess. Laws 1993, ch. 322, § 18–1–105(1)(a)(V)(C), at 1982.

Nothing in the language of § 17–2–201(5)(a), § 18–1–105(1)(a)(V)(C), or any other statutory provision then in effect expressly excludes application to defendant's sentence of either § 17–2–201(5)(a) or § 18–1–105(1)(a)(V)(C). Thus, we must determine whether both can be applied and given effect or, if not, which must control.

### C.

The cardinal rule in interpreting statutes is to ascertain and give effect to what appears to be the legislative intent, or purpose. If the language is ambiguous or different provisions appear to conflict, we may consider other factors, such as legislative history, the former law, the consequences of a particular construction, and the object sought to be obtained. *See* § 2–4–203, C.R.S.1998; *Henderson v. RSI, Inc.,* 824 P.2d 91 (Colo. App.1991).

We must presume that the General Assembly selected the language used in a statute with the intent that the entire statute be effective. *See* § 2–4–201, C.R.S.1998; *People v. Armstrong,* 919 P.2d 826 (Colo.App.

1995). Likewise, we must strive to construe a statutory scheme in a manner that gives harmonious and sensible effect to all of its parts, consistent with the overall legislative intent. *Wilczynski v. People,* 891 P.2d 998 (Colo.1995); *A.B. Hirschfeld Press, Inc. v. Denver,* 806 P.2d 917 (Colo.1991); *see also Bynum v. Kautzky,* 784 P.2d 735 (Colo.1989) (if possible, we must try to reconcile statutes' governing the same subject).

When conflict between two statutory provisions is irreconcilable, we may employ additional rules of statutory construction. For example, if a general provision conflicts with a more specific provision, the more specific provision prevails as an exception to the more general provision, unless the general provision is later adopted and "the manifest intent is that the general provision prevail." Section 2–4–205, C.R.S.1998. In addition, if irreconcilable statutes are enacted in different legislative sessions, the statute prevails that is latest in its effective date. Section 2–4–206, C.R.S.1998. Finally, and perhaps most importantly here, in interpreting a comprehensive legislative scheme, we must construe each separate statutory provision to further, not defeat, the overall legislative intent. *A.B. Hirschfeld Press, Inc. v. Denver, supra; Henderson v. RSI, Inc., supra.*

### D.

Section 17–2–201(5)(a) was enacted in 1979, well before the General Assembly created mandatory parole. *See* Colo. Sess. Laws 1979, ch. 157, § 17–2–201(5)(a) at 667. In contrast, § 18–1–105(1)(a)(V)(C) was enacted in 1993 with other mandatory parole provisions as part of House Bill 93–1302 which was entitled "An Act Concerning the Restructuring of the Criminal Justice System in the State of Colorado." *See* Colo. Sess. Laws 1993, ch. 322, at 1975–92 (the 1993 Act).

The 1993 Act includes changes to the sentencing and parole statutes, as well as to statutes defining substantive crimes. Of relevance here, the term of parole is statutorily specified *and* made mandatory. *See* Colo. Sess. Laws 1993, ch. 322, §§ 18–1–105(1)(a)(V)(B) through (D).

■ Mandatory parole cannot be waived or suspended by the trial court. In addition, unlike discretionary parole under § 17–2–201(5)(a), the term of mandatory parole under the 1993 Act is not in lieu of, or limited to, the remainder of the term of incarceration. Instead, it is in addition to the term of incarceration. Indeed, when an offender is not discharged to parole supervision during the term of incarceration, the term of mandatory parole does not even commence until the sentence of incarceration has been fully discharged. *See* § 17–22.5–403(7), C.R.S. 1998, and Colo.Sess. Laws 1993, ch. 322, §§ 18–1–105(1)(a)(V)(B) and 18–1–105(1)(a)(V)(D); *People v. Barth,* 981 P.2d 1102 (Colo.App. 1999).

Under the 1993 Act, if the parole board determines that an offender has been sufficiently rehabilitated and reintegrated into society and can no longer benefit from parole supervision, the board has discretion to "discharge" the offender during the term of mandatory parole. *See* Colo.Sess. Laws 1993, ch. 322, § 18–1–105(1)(a)(V)(B); *People v. Mayes,* 981 P.2d 1106 (Colo.App.1999). Nevertheless, like the trial court, the parole board does not have authority to waive or suspend mandatory parole as an initial matter. Further, the board does not have authority, at least initially, to set the term of mandatory parole. *See* Colo.Sess. Laws 1993, ch. 322, §§ 18–1–105(1)(a)(V)(B) and 18–1–105(1)(a)(V)(D). Its role is therefore more limited under the 1993 Act than under § 17–2–201(5)(a).

It might be argued that § 17–2–201(5)(a) and §§ 18–1–105(1)(a)(V)(A) through (C) can nevertheless be given effect and reconciled by construing § 17–2–201(5)(a) to give the parole board discretion over parole when an offender is released to parole supervision before the sentence of incarceration has been fully served. That discretion would include setting the length of the term of parole during the remaining term of the prison sentence. In contrast, §§ 18–1–105(1)(a)(V)(A) through (C) could be construed to remove that discretion when the term of mandatory parole commences, either at the end of that term of discretionary parole or at the end of the prison sentence, whichever first occurs.

However, the problem with such an approach, at least for sex offenses committed between July 1, 1993, and July 1, 1996, is that it cannot be reconciled with two additional statutory provisions applicable during that period.

At the same time the General Assembly enacted the 1993 Act, it also enacted § 17–22.5–403(7), C.R.S. 1998. As pertinent here, § 17–22.5–403(7) provides:

*For any offender who is incarcerated for an offense committed on or after July 1, 1993, upon application for parole, the state board of parole ..., using the guidelines established pursuant to § 17–22.5–404, shall determine whether or not to grant parole. The state board of parole, if it determines that placing an offender on parole is appropriate, shall set the length of the period of parole at the mandatory period of parole established in section 18–1–105(1)(a)(V), C.R.S.* (emphasis added)

Hence, the parole board retains discretion to determine whether a sex offender, even one whose offense occurred after July 1, 1993, may be released on parole before a sentence of incarceration has been lawfully discharged. Nevertheless, § 17–22.5–403(7) requires that any release to parole supervision must be for the statutorily specified term of mandatory parole, even if the sentence of incarceration has not been fully discharged.

■ Section 18–1–105(1)(a)(V)(D) was also enacted as part of the 1993 Act. It expressly addresses the interaction between the parole board's discretion to release an offender to parole supervision during the term of incarceration and the mandatory parole that must follow. As applicable here, it provides that if any offender, including a sex offender, is granted release to parole supervision during the term of incarceration, the offender is deemed to have discharged the sentence of imprisonment upon that release, for purposes of calculating the term of mandatory parole. *See* Colo. Sess. Laws 1993, ch. 322, § 18–1–105(1)(a)(V)(D) at 1982–83.

■ It thus appears that the General Assembly intended to establish an integrated sentencing scheme applicable to all felonies

committed between July 1, 1993, and July 1, 1996—expressly including sex offenses. Under § 17–22.5–403(7), the parole board has discretion to release a sex offender to parole supervision before the sentence of incarceration has been lawfully discharged, subject to § 18–1–105(1)(a)(V). Under §§ 18–1–105(1)(a)(V)(B) & 18–1–105(1)(a)(V)(D), mandatory parole for a statutorily prescribed term is required after release, whether the release is before or after the inmate has served the entire prison sentence.

As a result, it further appears that § 17–2–201(5)(a) cannot be reconciled with the 1993 Act and § 17–22.5–403(7). Furthermore, the result of giving § 17–2–201(5)(a) precedence over this integrated statutory scheme, as defendant urges, would be that, after being released from prison, sex offenders, unlike all other felons, could avoid mandatory parole for a statutorily prescribed term. This would defeat, not further, the apparent legislative purpose.

The integrated statutory scheme created by the 1993 Act and § 17–22.5–403(7) demonstrates the General Assembly's intent to ensure that *all* felons, including sex offenders, would serve a period of mandatory parole after release from prison. Indeed, as earlier noted, § 18–1–105(1)(a)(V)(C) singles out sex offenders in specifying a five-year term of mandatory parole, regardless of the class of the felony conviction. The result is that the term of mandatory parole for many convicted sex offenders is longer than that required for other felony convictions of the same class. Thus, the General Assembly has given the role of mandatory parole for sex offenders released from prison greater, not less, importance than for other felons.

We recognize that the General Assembly again changed the statutory scheme in 1996 (the 1996 Act). The statute giving the parole board discretion in setting the length of parole, § 17–2–201(5)(a), was amended at that time:

As to any person sentenced for conviction of (3)27 AN OFFENSE INVOLVING UNLAWFUL SEXUAL BEHAVIOR (3)27 COMMITTED PRIOR TO JULY 1, 1996, the [state parole board] has the sole power to grant or refuse to grant parole and to fix the condition thereof and has full discretion to set the duration of the term of parole granted 4(27)

*See* Colo. Sess. Law 1996, ch. 280, § 17–2–201(5)(a) at 1585 (new wording capitalized). Read in isolation, it could be argued that the amendment made § 17–2–201(5)(a), and thus discretionary parole, applicable to defendant's crime.

However, the amendment to § 17–2–201(5)(a) was in Section 6 of H.B. 96–1181, which contained twenty-two sections. Section 21 provides that H.B. 96–1181 "shall take effect on July 1, 1996, and shall apply to offenses committed on or after said date (4)27" *See* Colo. Sess. Law 1996, ch. 280, at 1589.

Thus, the amendment to § 17–2–201(5)(a), to the extent it added the reference to sex offenses committed before July 1, 1996, created a direct conflict within the 1996 Act itself. Furthermore, the amendment directly conflicted with § 18–1–105(1)(a)(V)(C), which continued to expressly require a five-year term of mandatory parole.

The conflict is clarified by considering other changes the General Assembly made to the statutory scheme in 1998. Initially, it amended § 18–1–105(1)(a)(V)(C):

Notwithstanding sub-subparagraph (A) of this subparagraph (V), the mandatory period of parole for a person convicted of a felony offense COMMITTED PRIOR TO JULY 1, 1996, pursuant to part 4 of article 3 of this title, or part 3 of article 6 of this title, shall be five years. NOTWITHSTANDING SUB-SUBPARAGRAPH (A) OF THIS SUBPARAGRAPH (V), THE PERIOD OF PAROLE FOR A PERSON CONVICTED OF A FELONY OFFENSE COMMITTED ON OR AFTER JULY 1, 1996, PURSUANT TO PART 4 OF ARTICLE 3 OF THIS TITLE, OR PART 3 OF ARTICLE 6 OF THIS TITLE, SHALL BE SET BY THE STATE BOARD OF PAROLE PURSUANT TO SECTION § 17–2–201(5)(a.5), C.R.S., BUT IN NO EVENT SHALL THE TERM OF THE PAROLE EXCEED THE MAXIMUM SENTENCE IM-

POSED UPON THE INMATE BY THE COURT.

*See* Colo. Sess. Laws 1998, ch. 139, § 18–1–105(1)(a)(V)(C), at 399 (new wording capitalized). The amendment thus made clear that mandatory parole applied to sex offenses committed before July 1, 1996, with discretionary parole applicable only after that date.

This amendment was followed by the enactment of House Bill 98–1156 (the 1998 Act). Among other things, the 1998 Act included the Colorado Lifetime Supervision Of Sex Offenders Act, § 16–13–801, et seq., C.R.S. 1998.

Of greater relevance here, the General Assembly once more amended § 18–1–105(1)(a)(V)(C), without referencing the earlier 1998 amendment, while adding §§ 18–1–105(1)(a)(V)(C.3) and 18–1–105(1)(a)(V)(C.5):

(1)(a)(V)(C) Notwithstanding sub-subparagraph (A) of this subparagraph (V), the mandatory period of parole for a person convicted of a felony offense COMMITTED PRIOR TO JULY 1, 1996, pursuant to part 4 of article 3 of this title, or part 3 of article 6 of this title, shall be five years.

(C.3) NOTWITHSTANDING THE PROVISIONS OF SUB-SUBPARAGRAPH (A) OF THIS SUBPARAGRAPH (V), THE PERIOD OF PAROLE FOR A PERSON CONVICTED OF A FELONY OFFENSE COMMITTED ON OR AFTER JULY 1, 1996, BUT PRIOR TO NOVEMBER 12, 1998, PURSUANT TO PART 4 OF ARTICLE 3 OF THIS TITLE OR PART 3 OF ARTICLE 5 OF THIS TITLE, SHALL BE SET BY THE STATE BOARD OF PAROLE PURSUANT TO SECTION § 17–2–201(5)(A)(A.5), C.R.S.

(C.5) NOTWITHSTANDING THE PROVISIONS OF SUB-SUBPARAGRAPH (A) OF THIS SUBPARAGRAPH (V), ANY PERSON SENTENCED FOR A SEX OFFENSE, AS DEFINED IN SECTION 16–13–803(5), C.R.S., COMMITTED ON OR AFTER NOVEMBER 1, 1998, SHALL BE SENTENCED PURSUANT TO THE PROVISIONS OF PART 8 OF ARTICLE 13 OF TITLE 16, C.R.S. [the Colorado Lifetime Supervisions of Sex Offenders Act.]

*See* Colo. Sess. Laws 1998, ch. 303, §§ 18–1–105(1)(a)(V)(C), 18–1–105(1)(a)(V)(C.3), and 18–1–105(1)(a)(V)(C.5), at 1289 (new wording capitalized). These amendments therefore yet again clarify the differing roles played by mandatory and discretionary parole, depending on when the sex offense was committed.

Viewed in this context, the amendment to § 17–2–201(5)(a) in 1996, to the extent it indicates that parole was discretionary for sex offenders who committed their offenses *before* July 1, 1996, appears to have been an inadvertent error. The 1993 Act, together with the other 1996 and 1998 amendments, persuasively demonstrate the General Assembly's intent that sex offenders such as defendant, who committed their offenses between July 1, 1993, and July 1, 1996, be subject to mandatory, not discretionary, parole.

Contrary to defendant's contention, *Jackson v. Zavaras*, 963 P.2d 1118 (Colo.1998) does not require that we adopt his statutory construction. In that case, although the defendant was subject to discretionary rather than mandatory parole, his sex offenses were committed in 1981 and 1984. Hence, the 1993 Act and § 17–22.5–403(7), which were not enacted until years later, obviously did not apply.

Defendant's final argument in support of giving § 17–2–201(5)(a) precedence is that § 18–1–105(1)(a)(V)(A) applies generally to all felonies, while § 17–2–201(5)(a) more specifically applies to an offense like defendant's, involving unlawful sexual behavior. However, § 18–1–105(1)(a)(V)(C) just as specifically applies to the crime to which defendant entered his guilty plea, and it specifically applies to the three-year period from July 1, 1993, to July 1, 1996, the period during which defendant committed his crime. *Compare* Colo. Sess. Laws 1993, ch. 322, § 18–1–105(1)(a)(V)(C) at 1975–92 *with* Colo. Sess. Laws 1979, ch. 157, § 17–2–201(5)(a) at 667.

■ For these reasons, we conclude that § 17–2–201(5)(a) must be construed to apply only to sex offenses committed before July 1, 1993. For sex offenses committed between July 1, 1993, and July 1, 1996, §§ 17–22.5–403(7) and 18–1–105(1)(a)(V)(C) apply. We

therefore further conclude that the trial court did not err in imposing, as part of defendant's sentence, mandatory parole for a term of five years following his release from incarceration.

## II.

Defendant separately asserts that, despite any statutory requirement for mandatory parole, the most recent plea agreement did not include a term of mandatory parole. He contends that he is therefore entitled to specific performance of a total sentence, including incarceration and parole, of no more than four years. In the alternative, he argues his counsel was ineffective in failing to advise him about mandatory parole. Thus, he argues, the trial court erred in denying his Crim. P. 35(c) motion without a hearing, and in failing to appoint counsel to represent him. In the circumstances presented here, we disagree.

When the motion, the files, and the record clearly establish that the defendant is not entitled to relief, a court may deny a Crim. P. 35(c) motion for post-conviction relief without conducting a hearing. *See People v. Hartkemeyer*, 843 P.2d 92 (Colo. App.1992). In such circumstances, the court may also decline to exercise its discretionary authority to appoint counsel. *See Duran v. Price*, 868 P.2d 375 (Colo.1994); *Brinklow v. Riveland*, 773 P.2d 517 (Colo.1989).

To satisfy due process concerns that a plea be made knowingly, it must be made with a full understanding of its consequences, and the supreme court has concluded that the trial court must therefore advise a defendant of the "direct consequences" of a conviction resulting from a plea. A mandatory parole term is such a consequence because of the significant curtailment of a defendant's freedom during the term of parole. *See People v. Espinoza*, 985 P.2d 68 (Colo.App.1999).

Here, before accepting defendant's admission to the probation revocation complaint, the trial court advised him that, pursuant to the parties' stipulation, if he entered a plea of guilty he would be sentenced to four years in the custody of the DOC. The court did not mention any additional term of mandatory parole.

In concluding that defendant had been adequately advised regarding mandatory parole before he entered his plea to the revocation complaint, the Crim. P. 35(c) court relied primarily on the written Request to Plead Guilty concerning defendant's original plea agreement. In doing so, the court did not have the benefit of the recent decision in *People v. Jones*, 985 P.2d 75 (Colo.App.1999). In rejecting a similar argument, the division in *Jones* declined to read an additional term into a later plea agreement simply because the defendant had been told previously that he could receive a sentence including mandatory parole if his deferred judgment were revoked.

Nevertheless, for a different reason, we reach the same conclusion as the Crim. P. 35(c) court. Our conclusion derives from a review of the entire record.

Consistent with the requirements of due process, the court may review the record as a whole to determine whether the defendant entered a guilty plea knowingly and voluntarily. *Lacy v. People*, 775 P.2d 1 (Colo.1989), *cert. denied*, 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 337 (1989); *Waits v. People*, 724 P.2d 1329 (Colo.1986); *see also People v. Weed*, 830 P.2d 1095 (Colo.App.1991)(providency court's failure orally to advise the defendant regarding a certain aspect of the plea agreement did not render his guilty plea invalid where the petition for entry of guilty plea included the information omitted from the providency advisement).

Here, the record indicates that after accepting defendant's guilty plea to the revocation complaint, the trial court proceeded immediately to sentencing. After imposing the sentence to prison, the court expressly inquired whether, because the crime was committed after July 1, 1993, a mandatory period of parole would apply. Defense counsel agreed that it would and stated that the term of mandatory parole was for five years.

Defendant did not object to his counsel's statement or otherwise suggest that the sentence imposed, including mandatory parole,

did not conform to his understanding of the plea agreement. Indeed, after imposing sentence, the court asked if there was anything else to address, and defendant said nothing. Mandatory parole was also included on the mittimus.

 Under these circumstances, the record establishes that when defendant entered his guilty plea he understood that he would be required to serve an additional term of mandatory parole. Accordingly, the trial court properly denied defendant's Crim. P. 35(c) motion without a hearing, and without appointment of counsel. *See also People v. Espinoza, supra* (no issue raised concerning lack of evidence to show that defendant actually did not understand that his agreed sentence included a mandatory parole period despite inadequate providency advisement).

 For the same reason, we reject defendant's contention that his counsel was ineffective for failing to advise him regarding the mandatory parole period. *See People v. Pozo*, 746 P.2d 523 (Colo.1987)(in order to show the required prejudice, the defendant had to establish that but for counsel's alleged dereliction, he would not have pled guilty to the revocation complaint and instead would have proceeded to a revocation hearing, and that the result of the hearing would have been more favorable to him).

### III.

Defendant next asserts that the addition of a term of mandatory parole makes his sentence longer than the six-year sentence initially imposed. He argues that this violates his constitutional right against double jeopardy and the doctrine of separation of powers. We conclude to the contrary.

 Upon the revocation of probation, the trial court by statute may impose any sentence "which might originally have been imposed." *See* § 16–11–206(5), C.R.S.1998. The imposition upon revocation of a longer aggregate sentence than the original sentence to probation does not violate double jeopardy. *See People v. Preuss*, 920 P.2d 859 (Colo.App.1995).

 Likewise, because the term of mandatory parole is part of the original sentence, defendant's right to protection from double jeopardy has not been violated. Nor has any branch of government been impermissibly assigned the powers constitutionally or statutorily vested in another. *See People v. Barth, supra.*

### IV.

Defendant's final argument is that the imposition of mandatory parole violated his right to equal protection. However, defendant presented no factual or legal basis for the claim in his Crim. P. 35(c) motion. Such conclusory allegations were insufficient to demonstrate that he was entitled to relief under Crim. P. 35(c) or to require a hearing. *See People v. Rodriguez*, 914 P.2d 230 (Colo. 1996).

The order is affirmed.

Judge DAVIDSON and Judge VOGT concur.