Vance MARTIN, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondents.

No. 99SC602.

Supreme Court of Colorado,
En Banc.

June 25, 2001.

Rehearing Denied July 23, 2001.

Nancy L. Flax, Denver, CO, Attorney for Petitioner.

Ken Salazar, Attorney General, Dawn M. Weber, Assistant Attorney General, Alan J. Gilbert, Solicitor General, Robert M. Russel, Assistant Solicitor General, Appellate Division, Criminal Justice Section, Denver, CO, Attorneys for Respondent.

Jessica L. West, Denver, CO, Amicus Curiae for Colorado Defense Bar (CDB).

Justice MARTINEZ delivered the Opinion of the Court.

In this case we consider whether the court of appeals erred by affirming the trial court's

denial of the defendant's Crim. P. 35(c) motion, and holding that a defendant convicted of a sexual assault occurring in July 1993 is subject to a mandatory five-year period of parole in addition to a period of incarceration. *People v. Martin,* 987 P.2d 919 (Colo. App.1999). The focus of our inquiry is on the effect of several changes by the General Assembly to sections 17-2-201(5), 6 C.R.S. (1999), 17-22.5-403, 6 C.R.S. (1999), and 18-1-105(1), 6 C.R.S. (1999) in 1993 and 1996.[1]

We conclude that these statutes conflict and cannot be reconciled. Since 1979, two sentencing systems have been in effect in Colorado: one addresses sex offenders and one addresses all other offenders. Parole for sex offenders has never been automatic or mandatory as it sometimes has been for all other offenders. Rather, the parole board retains the discretion or authority to decide if and when a sex offender will be paroled.

When this defendant was sentenced to prison in 1997 for committing a sex offense in 1993, two conflicting laws applied to his term of parole. Legislation enacted in 1996 amended and reenacted the traditional separate sentencing system for sex offenders. The 1996 act, by its express terms, applied to sex offenders like the defendant who committed such crimes in 1993, and limited the length of a sex offender's parole to the balance of the offender's prison sentence or five years, whichever was less.

The conflicting law, enacted in 1993, neither repealed nor amended the separate parole scheme for sex offenders. Instead, this law applied a five-year mandatory parole period to sex offenders to be served after completing the term of imprisonment. The 1996 legislation did not resolve the conflict created by the 1993 law which provided for a discretionary grant of parole by the parole board. Our review of the legislative history reveals that some legislators were aware of the confusion and conflict in the two laws.

Given this lack of direction, we resolve the conflict by applying the principle that the more specific statute must prevail over the more general statute. To find that the 1993 statute prevailed, we would have to find that the legislature implicitly repealed the separate statutory sentencing system for sex offenders. This we cannot do because repeals by implication are not favored and the 1996 act expressly addresses this issue. It states that the separate sentencing for sex offenders was in effect when this crime was committed in 1993 and continued to be in effect when the 1996 act was passed. Faced with this explicit statement by the legislature, we cannot read a contrary result into the law.

It is for the legislature, not the courts, to decide what laws best serve the public interest, and the various laws at issue here indicate some of the differing and evolving views on parole. Whether parole for sex offenders should be mandatory or discretionary is a legislative decision that we do not second guess. Many sex offenders receive lengthy sentences and discretionary parole allows the parole board to keep a sex offender incarcerated for the duration of the entire sentence. On the other hand, a sex offender who receives a relatively short sentence, as is illustrated here, may serve little or no time on parole under a grant of discretionary parole.

We hold that, under the statutes in effect when the defendant was sentenced, a person convicted of a sexual offense committed before July 1, 1996, is subject to a period of discretionary parole no longer than the remainder of the maximum sentence of incarceration imposed by the court or five years, whichever period of time is shorter.

In this case, the defendant was sentenced to a four-year period of incarceration and erroneously given five years of mandatory parole. The maximum period of parole, therefore, to which he may rightfully have been subject could not have exceeded four years. Accordingly, we reverse the court of appeals' judgment affirming the district court's denial of the defendant's Crim. P. 35(c) motion.

## I. STATEMENT OF THE CASE

The defendant, Vance Martin (Martin), pleaded guilty in January 1994 to sexual

---

1. After our initial unanimous opinion in this case, issued September 18, 2000, a divided court granted the People's petition for rehearing. Although a majority of this court is convinced that our earlier opinion correctly analyzed the issues before us, we replace that opinion with our opinion here in order to address the variegated argument now before us.

assault on a child by a person in a position of trust, in violation of section 18-3-405.3(2), 6 C.R.S. (1997). The offense occurred between July 1 and July 31, 1993. The defendant initially was given a suspended sentence of six years of imprisonment and five years of probation. After two probation violations, Martin entered into a plea bargain in May 1997 and was sentenced to four years of imprisonment plus a five-year term of mandatory parole.

In February 1998, the defendant filed a *pro se* Crim. P. 35(c) motion for post-conviction relief. He alleged, in addition to other claims, that imposition of the parole term under the plea bargain was invalid under section 17-2-201(5)(a). The district court summarily denied the motion. Martin appealed the district court's denial of his 35(c) motion to the court of appeals, which affirmed the district court's judgment. *See People v. Martin,* 987 P.2d at 928. We granted Martin's petition for writ of certiorari to determine whether, pursuant to section 17-2-201(5)(a), the district court erroneously imposed a mandatory five-year parole term for the 1993 sexual assault offense. We now reverse the judgment of the court of appeals.

## II. LEGISLATIVE HISTORY

To analyze this case, we begin with an explication of the legislative history concerning parole. Because of the numerous changes that have been made to the laws surrounding parole in the past two decades, our interpretation of the statutes is multi-faceted and complex. Thus, to begin, we set forth the history of the many legislative changes in an attempt to clarify the confusing situation.

### A.

Section 17-2-201, 6 C.R.S. (2000), governs the creation of the state board of parole (board) and delineates the board's powers.

This section evolved from section 39-18-1, 16 C.R.S. (1971), in which the board received the sole power to grant, or refuse to grant, parole and to fix the condition of such parole. Additionally, the parole board had "full discretion to set the duration of the term of parole granted, but in no event ... [could] the term of parole exceed the maximum sentence imposed upon the inmate by the court." § 39-18-1(4). In 1976, this section underwent renumbering, and appeared as section 17-1-201(4). In 1977, it was again renumbered when Title 17 was repealed and reenacted with amendments, and appeared in its current location, § 17-2-201(5)(a). *See* ch. 223, sec. 10, Title 17, 1977 Colo. Sess. Laws 894, 903-49. The language of the section, however, did not change. *See id.*

In 1979, the legislature amended the felony sentencing scheme, creating "presumptive ranges of penalties" as guidelines for the court to order a specific term of imprisonment. The changes also mandated the release of most convicted offenders to a one-year period of parole once such offenders accumulated the appropriate number of "good" and "earned" time credits. *See* ch. 157, sec. 10, § 16-11-310, 1979 Colo. Sess. Laws 662, 666; ch. 157, sec. 16, § 18-1-105, 1979 Colo. Sess. Laws 669, 669-70. Even for those offenders who violated the terms of parole and thus had their parole revoked, the period of reincarceration and reparole were limited by the requirement that they not exceed one year. *See* ch. 157, sec. 14, § 17-22.5-103, 1979 Colo. Sess. Laws 662, 667-68.

In the same year, the General Assembly provided for a one-year period of parole for most offenders, it also amended section 17-2-201(5)(a), adding language stating that the state board of parole had full discretion to set parole for sex offenders.[2] Ch. 157, sec. 12, § 17-2-201(5)(a), 1979 Colo. Sess. Laws 662, 667. This new amendment also added a five-year limitation to its requirement that the

---

2. Throughout this opinion, we refer to "sex offenders" as well as to "individuals convicted of sex offenses." These terms, used interchangeably, refer specifically to those individuals specified in section 17-2-201(5)(a), 8A C.R.S. (1986 & Supp. 1996). That section defines sex offenses based upon the definition found in section 16-13-202(5), 8A C.R.S. (1986 & Supp. 1996). By that definition, "sex offenders" generally includes individuals convicted of all types of felony sexual assault, sexual assault on a child, sexual assault on a child by one in a position of trust, sexual assault on a client by a psychotherapist, aggravated incest, and attempt to commit any of these offenses.

period of parole not exceed the maximum sentence imposed, stating, "in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court *or five years, whichever is less." Id.* (emphasis in original).

### B.

In 1985 the General Assembly again amended article 22.5 of Title 17, returning discretion of parole for all offenders to the state board of parole. Ch. 145, sec. 4, § 17-22.5-303(6), 1985 Colo. Sess. Laws 647, 648-49. Then, in 1990, article 22.5 was amended yet again, this time removing the concept of good time, changing the requirements for parole eligibility, and significantly amending the rules dealing with parole revocation. Ch. 120, sec. 19, § 17-22.5-401-405, 1990 Colo. Sess. Laws 939, 946-52. Thereafter, regulation of parole remained relatively unchanged until 1993 when the General Assembly adopted a scheme of mandatory parole for convicted felons. *See* ch. 322, sec. 7, § 18-1-105(1)(a)(V), 1993 Colo. Sess. Laws 1975, 1981-82.

Under the new scheme of mandatory parole, the legislature adopted section 18-1-105(1)(a)(V), which detailed the length of mandatory periods of parole for felons, basing the length of the parole periods on the class of felony for which the individual was convicted. *Id.* Accordingly, the length of prison terms and parole terms became separate components of the penalty imposed by the court. Each penalty included not only a determinate sentence of imprisonment, but also a pre-determined period of parole.

This new scheme of pre-determined, or mandatory, parole eliminated the authority of the state board of parole to determine the length of parole terms for most offenders. However, despite this new regimen which shifted to mandatory parole, section 17-2-201(5)(a), providing discretionary parole for sex offenders, was neither amended nor repealed.

### C.

In 1996, the General Assembly revised section 17-2-201(5)(a), amending it to specify that the section applies to persons convicted of a broader group of sex offenses, including those defined under the earlier version of section 17-2-201(5)(a), plus several other offenses generally related to crimes against children, committed prior to July 1, 1996.[3] *See* ch. 280, sec. 6, § 17-2-201(5)(a), 1996 Colo. Sess. Laws 1578, 1584; § 17-2-201(5)(a), 6 C.R.S. (2000). The legislature also added section 17-2-201(5)(a.5) in 1996, giving the same powers to the state board of parole as in section 17-2-201(5)(a), but applying the section to individuals committing offenses on or after July 1, 1996. *Id.* Thus, sections 17-2-201(5)(a) and (a.5), when read together, provide that the state board of parole retained its powers over questions of sex offender parole for offenses committed before, as well as on and after, July 1, 1996.

### D.

In 1998,[4] the legislature again revised the parole laws pertaining to persons convicted of certain sex offenses [5] with the introduction

3. The terms "broader class of sex offenders," or "broader class of sex offenses," as used in the balance of this opinion, refer to persons convicted of sex offenses as specified in section 17-2-201(5)(a), 6 C.R.S. (1997). That section uses the definition of "unlawful sexual behavior," as defined in section 18-3-412.5(1), 6 C.R.S. (1997), to specify those individuals who fall under its provisions. Under that definition, "broader class of sex offenders," as we refer to it here, includes all individuals convicted of any of the offenses previously considered to be sex offenses under section 17-2-201(5)(a), 6 C.R.S. (1986 & Supp. 1996), as well as all individuals convicted of any offense, of attempt to commit any offense, or of any offense having a factual basis of incest, indecent exposure, any violation related to child prostitution

under sections 18-7-403 to -406, 6 C.R.S. (1997), and/or trafficking in, exploitation of, procurement for exploitation of, or enticement of a child.

4. To properly analyze this case, we must interpret the statutes in effect in May 1997, when the defendant entered into the plea agreement that included the term of parole at issue. Therefore, while we briefly discuss the several 1998 amendments here, we only do so to provide a complete picture of the legislative history in this area of the law.

5. We will use the term "Lifetime Supervision sex offenders" to refer to those individuals whose parole and sentencing is governed by the provisions in part 8 of article 13 of Title 16, 6 C.R.S.

of the Colorado Lifetime Supervision Act (the Act). *See* ch. 303, sec. 1, § 16-13 part 8, 1998 Colo. Sess. Laws 1278-88. Under the new statute, the General Assembly created a program through which Lifetime Supervision sex offenders could, if necessary, receive treatment and supervision for the rest of their lives. § 16-13-801, 6 C.R.S. (2000). Similar to section 17-2-201(5), the state board of parole retains control over Lifetime Supervision sex offender parole until such time as the board finds that an offender has been rehabilitated to a point where supervision is no longer required. § 16-13-806. Despite its name, the Act does not actually sentence Lifetime Supervision sex offenders to automatic lifetime parole, but instead mandates minimum periods that Lifetime Supervision sex offenders must serve on parole. *Id.*

In 1998, the General Assembly also amended section 18-1-105(1)(a)(V)(C). Ch. 139, sec. 6, § 18-1-105(1)(a)(V)(C), 1998 Colo. Sess. Laws 389, 399; § 18-1-105(1)(a)(V)(C), 6 C.R.S. (2000). The new section 18-1-105(1)(a)(V)(C) adopted the language used in both sections 17-2-201(5)(a) and (a.5), stating, "in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court." § 18-1-105(1)(a)(V)(C). Furthermore, this section states that the period of parole for the broader class of sex offenders who committed offenses on or after July 1, 1996, "shall be set by the state board of parole pursuant to section 17-2-201(5)(a.5)," placing both section 18-1-105(1)(a)(V)(C) and section 17-2-201(5)(a.5) in agreement. *Id.*

### III. ANALYSIS

Because resolution of this case turns on an interpretation of the numerous statutes governing imposition of parole, we next discuss the relevant principles of statutory construction and apply them to these parole provisions to explain why section 17-2-201(5)(a) limits the term of parole Martin may be granted to four years.

### A. PRINCIPLES OF STATUTORY CONSTRUCTION

 Our fundamental responsibility in interpreting a statute is to give effect to the General Assembly's purpose or intent in enacting the statute. *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996); *Lakeview Assocs. v. Maes*, 907 P.2d 580, 584 (Colo.1995). Our interpretive efforts begin with the language of the statute itself. *Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584. If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584. Conversely, if the statutory language does not unambiguously establish the General Assembly's purpose in enacting the statute, or if the statute appears to conflict with other provisions, then we may rely on other factors, such as legislative history, prior law, the consequences of a given construction of the statute, and the end to be achieved by the statute, to determine the meaning of a statute. § 2-4-203, 1 C.R.S. (1999); *Schubert v. People*, 698 P.2d 788, 793-94 (Colo.1985).

 Our analysis of a statute is founded on the assumption that the General Assembly intended that the entire statute be effective. § 2-4-201(1)(b), 1 C.R.S. (1999). We "must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." *Charnes v. Boom*, 766 P.2d 665, 667 (Colo. 1988); *see also Bynum v. Kautzky*, 784 P.2d 735, 738 (Colo.1989)("If possible, we must try to reconcile statutes governing the same subject."). In interpreting a comprehensive legislative scheme, we must construe each provi-

(2000). Under the definition in the Colorado Lifetime Supervision Act, Lifetime Supervision sex offenders include individuals who are convicted of or plead guilty or nolo contendere to sexual assault as described in section 18-3-402, 6 C.R.S. (2000); first and second degree sexual assault, as they existed before July 1, 2000; third degree felony assault as it existed prior to July 1, 2000; felony unlawful sexual contact; sexual assault on

a child; sexual assault on a child by one in a position of trust; aggravated sexual assault on a client by a psychotherapist; incest; aggravated incest; enticement of a child; patronizing a prostituted child; and criminal attempt, conspiracy, or solicitation to commit any of these offenses if such criminal attempt, conspiracy, or solicitation would constitute a class 2, 3, or 4 felony.

sion to further the overall legislative intent behind the statutes. *A.B. Hirschfeld Press, Inc. v. City & County of Denver*, 806 P.2d 917, 920 (Colo.1991).

If statutes conflict irreconcilably, then the General Assembly has directed us to apply special rules of construction to determine which statute will prevail. §§ 2-4-204 to -207. The legislative direction most relevant to the matter before us states that if a general provision conflicts with a specific provision, then "the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." § 2-4-205, 1 C.R.S. (1999). This legislative direction is consistent with common law principles of statutory construction. *See Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944)("Specific terms prevail over the general in the same or another statute which otherwise might be controlling.")(citing *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932); *Colo. Permanente Med. Group, P.C. v. Evans*, 926 P.2d 1218, 1236 (Colo.1996))("Generally, a specific statutory provision prevails over a general provision.")(Mullarkey, J., dissenting in part).

The reasoning behind this principle of statutory construction is a simple matter of logic. A general provision, by definition, covers a larger area of the law. A specific provision, on the other hand, acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance. § 2-4-205, 1 C.R.S. (1999)("[S]pecial or local provision prevails as an *exception* to the general provision." (emphasis added)). Thus, to hold that a specific provision prevails over a general one still allows for both provisions to exist. *Bd. of County Comm'rs v. Bainbridge, Inc.*, 929 P.2d 691, 716 n. 4 (Colo.1996)(Vollack, C.J., dissenting)(reasoning that specific provision prevails over general provision in order to "construe these two statutes in harmony before having to discard one"). If general provisions prevailed over specific ones, then specific provisions would cease to function entirely. As such, we must carefully

determine which provisions are general, and which are specific, in order to give full and sensible effect to the entire statutory scheme. *See* § 2-4-201(1)(b); *Charnes*, 766 P.2d at 667.

## B. MEANING OF SECTION 17-2-201(5)(a)

As explained below, we conclude that the language of the versions of sections 17-2-201(5), 17-22.5-403, and 18-1-105(1) in effect when Martin was sentenced to parole, do not clearly set forth the legislative intent concerning the parole term to which a defendant convicted of a sex offense may be sentenced. Therefore, we must look beyond the statutory language to determine the legislature's intent. *Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584. However, we begin with a discussion of section 17-2-201(5)(a).

Section 17-2-201(5)(a) provides in pertinent part that:

> As to any person ... sentenced for conviction of an offense involving unlawful sexual behavior, defined in section 18-3-412.5(1), C.R.S., committed prior to July 1, 1996 ... the board has the sole power to grant or refuse to grant parole and to fix the condition thereof and has full discretion to set the duration of the term of parole granted, but in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court or five years, whichever is less.

As discussed above, section 17-2-201(5)(a) was originally enacted in 1977. *See* ch. 223, sec. 10, § 17-2-201(5)(a), 1977 Colo. Sess. Laws 901, 913. While the earlier versions of section 17-2-201(5)(a) did not include the limiting language, "or five years, whichever is less" that was added in 1979, they did include the phrase that concerns us today, specifically, "in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court...." Ch. 157, sec. 12, § 17-2-201(5)(a), 1979 Colo. Sess. Laws, 664, 667.

We note that the use of the term "maximum" in the phrase we are interpreting here is of importance only as it relates to the initial sentencing scheme, enacted in 1899, under which courts imposed sentences ex-

pressed as a range between the "minimum" and "maximum" sentence a defendant could be made to serve (e.g. "5 to 40 years"). *See* ch. 104, sec. 1, 1899 Colo. Sess. Laws 233. This sentencing scheme was changed in 1979 so that courts now impose a specific term of imprisonment, expressed as one number (e.g. 40 years). Ch. 157, sec. 16, § 18-1-105(6), 1979 Colo. Sess. Laws 664, 669. The change in the sentencing scheme to specific terms imposed by the court therefore rendered the significance of "maximum" moot. Initially, within section 17-2-201(5)(a), the term "maximum" was used to guide the state board of parole to the highest period of incarceration imposed by the court. § 17-2-201(5)(a). However, with the shift to specific terms of incarceration, the state board of parole looked solely to the "sentence imposed upon the inmate by the court." *Id.* Thus, our analysis of the language in section 17-2-201(5)(a) assumes that the term "maximum" has no effect upon the meaning of the phrase "sentence imposed upon the inmate by the court," and we interpret the language of this section accordingly.

This court interpreted the language of section 17-2-201(5)(a) in *Duran v. Price*, 868 P.2d 375 (Colo.1994). In that case, we observed that the 1978 version of section 17-2-201(5)(a) confined the length of parole to the time remaining on a sentence of imprisonment. *Duran*, 868 P.2d at 378. Accordingly, an individual sentenced to eight years in prison who has served five years of his sentence at the time of parole, can be required to serve only three years of parole, because those three years represent the remainder of the unserved time of his original sentence. This interpretation was consistent with our understanding of the nature of parole. *See also Wilkerson v. Patterson*, 174 Colo. 264, 267, 483 P.2d 365, 366-67 (1971)(parole period of ninety days can not be granted within ninety days of the end of an inmate's sentence, because that parole period would exceed the remainder of the sentence).

In 1979, the amendment of this section included the addition of the five-year limitation language that remains in the current § 17-2-201(5)(a). At the House Judiciary Committee discussion of that amendment, Representative Anne Gorsuch explained that the inclusion of the language, "or five years, whichever is less," served to limit the length of parole for individuals who were paroled from life sentences under the earned time provisions of the statutes. Without the five-year limitation, those prisoners would face parole supervision for the remainder of their lives. *See Hearing on House Bill 1589, Before the House Judiciary Committee*, 52d General Assembly, 1st Regular Session (hearing tape, Mar. 13, 1979, 5:48 p.m. 7:15 p.m.). Representative Gorsuch's statements suggest that, at that time, the legislature wanted to prevent sex offenders serving life sentences from being placed on a lifetime period of parole.[6]

No changes were made to section 17-2-201(5)(a) despite the advent of mandatory

6. We recognize that statements made before a legislative committee are not incontrovertible proof of legislative intent. Generally, a statement made in a committee meeting that shines light upon the meaning of certain statutory language is not automatically presented to the legislature as a whole. In construing a statute, however, we find that such statements made in committee meetings do provide guidance in our analysis. *Hyland Hills Park & Recreation Dist. v. Denver & R.G.W.R.R.*, 864 P.2d 569, 574 n. 7 (Colo.1993)("Contemporaneous statements of individual legislators made on committee hearings are relevant as an indication of legislative intent." (citations omitted)). Other states have similarly relied upon such statements in their attempts to construe statutes. Norman J. Singer, *Statutes and Statutory Construction* § 48:10 (6th ed. 2000); *see also State v. Ledbetter*, 240 Conn. 317, 692 A.2d 713, 724 (1997)("In recent years we have repeatedly approved references to testi-

mony before legislative committees in order to shed light on legislative intent." (citations omitted)); *Maiter v. Chicago Bd. of Ed.*, 82 Ill.2d 373, 47 Ill.Dec. 721, 415 N.E.2d 1034, 1039 (1980)("[W]e agree that this legislative activity and the discussion of these bills in committee reflects the intent of the General Assembly."). In keeping with this line of authority, we use the testimony from committee meetings here to aid us in our analysis of the intent of the legislature. We do not conclude that such statements can provide us with a completely accurate insight into the mind of the legislature as a whole, but instead merely reveal the confusion that existed in the minds of those legislators who initially attempted to make sense of these statutes. Further, we conclude that if such confusion existed in the minds of the legislative committee members, then the legislature as a whole did not form any clear intent as to the interpretation of these statutes when enacted or amended.

parole and determinate sentencing in 1993. *See* ch. 322, sec. 7, § 18-1-105(1)(a)(V), 1993 Colo. Sess. Laws 1975, 1981-82. Under amended section 18-1-105, the length ·of parole and prison terms became separate components of a punishment imposed by the court, automatically including pre-determined periods of parole in addition to determinate sentences of incarceration. While this changed the nature of parole for most criminal offenders, the further amendments to section 17-2-201(5)(a), and legislative history, reveal legislative intent to retain the concept of discretionary parole for sex offenders.

When the General Assembly further amended section 17-2-201(5)(a) in 1996 to its present form, it added language specifying that the section applied to persons convicted of sexual offenses committed prior to July 1, 1996. Ch. 280, sec. 6, § 17-2-201(5)(a), 1996 Colo. Sess. Laws 1578, 1584. The amended language of this paragraph confirmed that the discretionary parole scheme continued to apply to those sex offenders committing crimes after the § 18-1-105 determinative sentencing schedule was enacted in 1993.

In a discussion of the 1996 amendment of section 17-2-201(5)(a) in front of the Senate Judiciary Committee, Ray Slaughter of the District Attorney's Council explained the language of this provision to the committee, stating, "[I]f the mandatory parole period . . . were four years, but there were eight years left to serve on the sentence, the person could be [kept on parole longer], but not beyond the eight years." He also stated, "In a sense . . . it allows the parole board to keep the person on a longer period of parole, but not to exceed the sentence." [7] *Hearing on House Bill 96-1181, Before the Senate Judiciary Committee*, 60th General Assembly, 2d Session (hearing tape, Apr. 26, 1996, 7:43 a.m.-8:40 a.m.). Mr. Slaughter's statements to the Senate Judiciary Committee reflect his interpretation that parole under this section could be longer than mandatory parole, but nonetheless it was limited to the length of time remaining undischarged in an individual's prison sentence as ordered by the court.

Debates over the same amendment to section 17-2-201(5)(a) also took place in the House Judiciary Committee. At the February 1, 1996 meeting of the committee, Peggy Heil, Director of the Sex Offender Treatment Program of the Colorado Department of Corrections, asked the legislature to remove the five-year limitation on parole from section 17-2-201(5)(a) that had been added in 1979. *See Hearing on House Bill 96-1181, Before the House Judiciary Committee*, 60th General Assembly, 2d Session (hearing tape, Feb. 1, 1996, 3:49 p.m.-4:53 p.m.).

In response to this request, Representative Carol Snyder testified to the success of the five-year parole terms in preventing recidivism among sex offenders. Representative Snyder asked that the committee not delete the five-year limitation, because such deletion would, in effect, place some sex offenders on much longer possible periods of parole. She stated, "We don't know and I can't say here today that this section will be appropriate forever, but we do know it's working now and that it's possible that this could extend beyond the five years, it could extend ten years, it could extend fifteen, we don't know. We simply know it works now." *Id.*

Finally, in the 1998 discussion of a conforming amendment to section 18-1-105(1)(a)(V)(C) in front of the Senate Judiciary Committee, a debate was waged concerning the meaning of the phrase "in no event shall the period of parole exceed the maximum sentence imposed upon the inmate by the court." The proposal before the committee was to repeat this language from section 17-2-201(5)(a.5) in section 18-1-105(1)(a)(V)(C). Senator Ken Arnold expressed his concern that, under section 17-2-201(5)(a.5), "[i]f [an inmate] serves out his full term . . . then he's done, he's not on parole." *Hearing on HB-1177, Before the Senate Judiciary Committee*, 61st General Assembly, 2d Session (hearing tape, March 11, 1998, 2:45 p.m.-approx. 4:00 p.m.). Senator Dottie Wham responded, stating, "Okay, now I see why it's so vague. You don't know whether you're talking about what's left of

---

7. Mr. Slaughter's statements to the committee do not address the five-year limiting language in section 17-2-201(5)(a).

the whole sentence." *Id.* Several other statements were made, some suggesting that the length of the period of parole, as described by the language in section 17-2-201(5)(a.5), is equal to the entire length of the sentence to incarceration, and is to be served in addition to whatever prison time is actually served. Other statements refuted that train of thought, and argued that the language clearly referred to discretionary parole as the remainder of the unserved period of incarceration at the time of an inmate's release. In an effort to settle the matter, Senator Wham suggested that the committee approve the conforming amendment despite confusion about its meaning: "Okay, let's just fix this and let somebody else worry about this, how much they're going to sentence." *Id.* With her statement, a vote was called, and the amendment to section 18-1-105(1)(a)(V)(C) passed.

[9, 10] We view these hearings as evidence of legislative confusion as to the actual meaning of the language in the statutes in question. While some legislators made arguments consistent with our view, expressed in *Duran* and *Wilkerson*, that section 17-2-201(5)(a) limits the length of parole to the unserved remainder of the sentence to incarceration, others argued the exact opposite. Despite this confusion, however, we generally presume that the General Assembly is aware of our previously expressed understanding of specific language. *People v. Swain,* 959 P.2d 426, 430-31 (Colo.1998); *Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997); *Tompkins v. DeLeon,* 197 Colo. 569, 570-71, 595 P.2d 242, 243-44 (1979). Here, the General Assembly did not merely use language we had previously interpreted. Rather, it left intact the exact words we had understood as limiting the length of parole to the unserved remainder of the sentence to incarceration. It is not reasonable to believe that the meaning of this language changed while the precise words remained unchanged. Accordingly, we hold that the meaning of the phrase "in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court" in section 17-2-201(5)(a), 6

C.R.S. (1999), continues to mean that the period of parole granted by the parole board cannot be longer than the unserved portion of the sentence of incarceration.

## C. PEOPLE'S ALTERNATIVE ARGUMENT

■ The People make an alternative argument [8] in this case that the plain meaning of the term "maximum sentence," as used in the phrase, "in no event shall the period of parole exceed the maximum sentence imposed upon the inmate by the court or five years, whichever is less," is the largest or longest period of incarceration to which the offender is sentenced, plus the maximum period of mandatory parole provided in section 18-1-105(1)(a)(V). Under this argument, the parole board would maintain its discretion of whether and when to parole offenders, but the length of time of that period of parole would be determined by adding the remainder of the unserved prison sentence to the statutorily applicable period of mandatory parole for that class of felony, as set forth in section 18-1-105(1)(a)(V).

Thus, for example, a Class 4 felony offender who is sentenced to ten years' incarceration would, under section 18-1-105(1)(a)(V), be subject to a three-year period of mandatory parole. If, under the People's argument, that offender were a sex offender paroled after serving eight of the ten years in prison, he would serve the remainder of the "maximum sentence," which would be two years of unserved prison time *plus* the three years of mandatory parole provided for other offenders, regardless of whether the sentencing court actually imposed that period of mandatory parole. In this example of the People's argument, the sex offender would serve a period of "discretionary" parole of five years.

The People's argument relies upon the idea that parole is an infringement on an offender's liberty and therefore a penalty. Under this argument, the People claim that the clear, plain meaning of "maximum sentence" includes both the actual prison sen-

---

8. The People also argue that the sex offender parole provisions are general and thus yield to mandatory parole sentencing provisions applica-

ble to all offenders, a position we address in our analysis of specific and general provisions in section E below.

tence given by the court and a period of parole as provided in section 18-1-105(1)(a)(V). Following this logic, the People argue that statutorily prescribed mandatory parole should thus be included in the section 17-2-201(5)(a) calculation of the remainder of the "maximum sentence imposed upon the inmate by the court" we adopt above. As illustrated above, under this argument, the parole board imposes a hybrid form of mandatory parole which equals the sum of the sentence imposed by the court and the mandatory period of parole required by section 18-1-105(1)(a)(V), not to exceed five years.

Before we begin analysis of the People's argument, we must note that our previous interpretation of the phrase "maximum sentence imposed upon the inmate by the court," as discussed above, necessarily defines "maximum sentence" as the sentence of incarceration ordered by the trial court. The interpretation of that language has not changed from our analysis of earlier versions of section 17-2-201(5)(a). *See Duran,* 868 P.2d at 378. We also reiterate that the language in the statute has not changed since that interpretation was first made. Thus, we are being asked by the People to reinterpret the same language and arrive at a new and different meaning, despite the fact that the language remains unchanged. We cannot reach this result. We conclude that such a change must be made by the General Assembly, and not by this court. *Amaya v. Dist. Court,* 197 Colo. 129, 130, 590 P.2d 506, 507 (1979). Nonetheless, we now turn to the People's argument to explain the additional reasons why we find this argument unpersuasive.

The People's argument assumes, as its initial premise, the result the People seek to achieve, that is, that the mandatory parole provisions apply to sex offenders. According to this argument, the words "maximum sentence" as used in section 17-2-201(5)(a) mean the combination of the prison sentence imposed by the sentencing court and a term of mandatory parole. Because this interpretation applies regardless of whether the sentencing court actually imposed a period of mandatory parole, the position incongruously combines the prison sentence imposed by the sentencing court with the term of mandatory

parole provided by section 18-1-105(1)(a)(V), irrespective of whether the sentencing court actually imposed a mandatory term of parole. However, the question of the meaning of the term "maximum sentence" arises precisely because we are attempting to determine whether mandatory parole, as provided for in section 18-1-105(1)(a)(V), applies in this case. Thus, by combining the mandatory parole term provided for in section 18-1-105(1)(a)(V) with the sentence actually imposed by the court, this argument, by its terms, assumes the answer to the question at issue.

To illustrate the fallacy of this argument, we begin by accepting as true the People's conclusion that sex offenders are subject to a period of parole imposed by the parole board. If section 17-2-201(5)(a) applies and subjects sex offenders to this hybrid form of discretionary parole, then the parole board has authority to set the period of parole. Because section 17-2-201(5)(a) gives this authority to the parole board, the sentencing judge should not play any role in setting a period of parole. However, under the People's argument, the trial court is required to impose the period of mandatory parole. The mandatory parole that the court is required to impose as a sentence is never actually served by the defendant. Instead, it is merely part of the calculus used to determine the "maximum sentence imposed upon the inmate by the court." Under the example we use above, a class 4 felony sex offender paroled after serving eight years of his ten year sentence would, pursuant to the People's logic, serve the remainder of the prison sentence plus the three year period of mandatory parole set forth in section 18-1-105(1)(a)(V), equaling five years of "discretionary parole." In contrast, under the interpretation of section 17-2-201(5)(a) we adopt above, that same offender, with the same sentence, would serve only two years of parole, which would reflect the remainder of his unserved prison sentence.

Accordingly, the People's argument is that the mandatory parole required to be imposed by the court applies to sex offenders only insofar as it is used to calculate the length of the period of the hybrid discretionary parole imposed by the parole board. Thus, under this argument the mandatory parole required

to be imposed by the court is not a sentence at all, because the sentence of mandatory parole, if imposed by the sentencing court, would never in fact be served by the offender. Nonetheless, the mandatory parole is part of the "maximum sentence."

Returning to our example under the People's argument, if the sentencing court sentences an offender to ten years' imprisonment, and to a three-year term of mandatory parole, then the mandatory parole of three years would only be part of the calculus of the length of the period of hybrid discretionary parole the defendant would serve. Thus, this defendant would serve the combination of the two-year remainder of the ten-year sentence to imprisonment, plus the three-year mandatory term of parole imposed by the sentencing court, or a five-year term of hybrid discretionary parole. By its terms, this argument means that sentencing courts would be required to impose sentences (such as the three-year term of mandatory parole) which, in fact, would never be served.

Looking beyond the logical fallacy in the People's argument, the People's interpretation of "maximum sentence," even if considered apart from the context of the phrase "maximum sentenced imposed upon the inmate by the court," is contrary to the plain meaning of the term as used elsewhere in the statutes. In section 18-1-105(1)(a)(V)(A), which governs both imprisonment and mandatory parole, the presumptive ranges of penalties are divided into three distinct categories: "Minimum Sentence," "Maximum Sentence," and "Mandatory Period of Parole." § 18-1-105(1)(a)(V)(A). The General Assembly has thus separated mandatory parole periods from the concept of "maximum sentence," and has not used any language implying that the period of parole is part of the "maximum sentence." If we regarded "maximum sentence" as including the period of mandatory parole, mandatory parole peri-

ods would not act as an additional statutory penalty. Such an interpretation would be inconsistent with the operation of mandatory parole as added to an offender's prison sentence. As such, it is apparent from the plain language of section 18-1-105(1)(a)(V)(A) that the use of the term "maximum sentence" is intended to refer only to the length of imprisonment, separate from any period of parole.

The People also argue that in both *Craig v. People*, 986 P.2d 951 (Colo.1999), and *Benavidez v. People*, 986 P.2d 943 (Colo.1999), this court implicitly recognized that "maximum sentence" includes not only the term of years for which an offender may be incarcerated, but also an additional period of parole during which an offender's freedom is restricted. We do not agree with the People's interpretation of our disposition in those two cases. In *Craig*, we held that an agreement to a sentence of "5 years DOC" refers only to the actual period of imprisonment to which an offender is sentenced. The defendant in that case argued that an agreement to a sentence of "5 years DOC" referred to the aggregate of the term of imprisonment in the DOC and the period of mandatory parole, or two years of incarceration and three years of parole. Our holding in *Craig*, however, made it clear that the sentence to five years of incarceration, plus an additional three-year period of mandatory parole, did not violate the defendant's agreement. *Craig*, 986 P.2d at 961-62. Had we held, as the People argue, that the period of parole was included in the overall "sentence," we would have necessarily concluded that the sentence of five years' imprisonment plus three years of mandatory parole violated the stipulation of a sentence of "5 years DOC." Thus, *Craig* directly refutes the proposition that the term "maximum sentence" includes both the term of imprisonment and the term of parole.[9]

Similarly, in *Benavidez*, we held that the trial court's statement to Benavidez that he

9. The prosecution also argues that, because we held in *Craig* that a mittimus sentencing an offender to DOC that is silent as to mandatory parole should be read to include the imposition of the requirement, sex offenders sentenced to the DOC should automatically have periods of mandatory parole read into their mittimuses. *See Craig*, 986 P.2d at 966. However, our holding in

*Craig* did not address sex offenders, nor mandatory parole for sex offenders, and as such, that holding cannot be extended to include sex offender parole. The rule that a silent mittimus should be read to include a period of mandatory parole refers only to those offenders for whom mandatory parole is applicable.

would receive "five years for five cases" clearly referred to the five-year limitation agreed upon by the parties, concerning imprisonment time only. 986 P.2d at 949. As such, any agreement made between Benavidez and the People which stipulated a maximum on any sentence imposed on him, would not have included any term of mandatory parole. *Id.* If the five-year maximum agreed to had included the five-year mandatory parole period statutorily required in that case, then Benavidez would have had to be sentenced directly to parole with no prison time. *Id.* We concluded that such a result would not only be absurd, but it would also be statutorily unavailable. *Id.* at 949 n. 4. Thus, our holding in *Benavidez* supports an interpretation of the term "maximum sentence" as including only a sentence to confinement, and excluding any period of parole that an offender is required to serve.

We have recently interpreted the terms "sentence" and "sentenced," as used by the legislature in section 17-27-105(1)(e), 6 C.R.S. (2000), to refer solely to the term of imprisonment ordered by a trial court, excluding any mandatory period of parole that necessarily follows that imprisonment. *People v. Johnson*, 13 P.3d 309, 311 (Colo.2000). In *Johnson*, we held that when the trial court resentenced the defendant to a six-year DOC sentence, plus a three-year parole period, it did not violate either his plea agreement, which stipulated a six-year maximum sentence to DOC, or the resentencing statute, section 17-27-105(1)(e).[10] *Johnson*, 13 P.3d at 315. Our interpretation of the statutory language of section 17-27-105(1)(e) led to the conclusion that "the period of mandatory parole that attaches to a sentence to the DOC ... is not part of the 'sentence.'" *Id.* at 312. Thus, in *Johnson* we held that, in the resentencing statute, the legislature intended for the mandatory parole period to be considered as a separate component of the sentencing scheme. *Johnson*, 13 P.3d at 315; *see also Clark v. People* 7 P.3d 163, 168 (Colo. 2000)("Such a modification would treat ... [the] advisement as limiting his maximum sentence to one year in the DOC *plus* two

years of parole, even though the trial court unambiguously advised Clark that he would face a maximum of three years in the DOC plus an additional period of parole." (emphasis added)).

This court has recognized that a defendant must be advised of the possible penalty, or penalties, including any additional period of parole, to which he may be subjected. Such a requirement, however, should not be construed to mean that "possible penalty or penalties" is equivalent to "maximum sentence imposed by the court." For example, under mandatory parole, a convicted offender does not begin serving the period of parole until his prison sentence has been fully served, or the parole board determines that he is ready for parole. § 17-22.5-403(7)(a). Once an offender is granted release to parole supervision by the state board of parole, he will be deemed to have discharged his sentence to imprisonment in the same manner as if he had been discharged pursuant to law. § 18-1-105(1)(a)(V)(D), 6 C.R.S. (1997). Thus, if he violates the conditions of that parole, he may be returned to confinement as a penalty for that parole violation. § 17-2-103(11)(b)(II). This new period of confinement is limited only by the board's statutory authority, and is not related to the offender's original sentence to incarceration. *Id.*

Under discretionary parole, however, an offender is released from prison to parole for the remainder of the unserved portion of his prison sentence. § 17-2-201(5)(a). If the offender violates the terms of his parole, he may be forced to serve the entire term of his sentence as a consequence. *People v. Black*, 915 P.2d 1257, 1269 (Colo. 1996). Thus, while an offender who is governed by discretionary parole will never serve any penalty greater than the sentence to which he is initially punished, an offender sentenced under the mandatory parole scheme faces a sentence to prison, a period of parole, and possibly even another period of confinement if he violates the conditions of his parole. Therefore, under the mandatory

---

**10.** Section 17-27-105(1)(e) states, in pertinent part, "[T]he court may resentence the offender without any further hearing so long as the of-

fender's sentence does not exceed the sentence which was originally imposed upon the offender."

parole regime, an offender must be advised of the possible prison sentence as well as the additional term of mandatory parole, because the period of mandatory parole is in addition to any sentence to incarceration. *See People v. Wilbur,* 890 P.2d 113, 118 (Colo.1995)("The court failed to advise Sandoval that he was subject to a mandatory one-year parole term in addition to the sixteen-year maximum sentence."). This additional period of mandatory parole, has been considered as a "possible penalty or penalties," and not as included in the phrase "maximum sentence imposed by the court."

Finally, looking to the dictionary definition of the terms in question, we note that *Black's Law Dictionary* states that "A maximum sentence sets the outer limit beyond which a prisoner cannot be held in custody." *Black's Law Dictionary* 1363 (6th ed. 1990). This definition suggests an interpretation of "maximum sentence" whereby individuals on parole are outside of the "custody" of the DOC. *See e.g. Badger v. Suthers,* 985 P.2d 1042 (Colo.1999)("[T]he district court sentenced Badger ... to nine years in the custody of the DOC, plus a period of parole."); *Bullard v. Dep't of Corrections,* 949 P.2d 999, 1003 (Colo.1997)("[B]ecause his parole was revoked, the DOC is required to keep him in custody."). As such, because we have previously determined that being "in custody" differs from being "on parole," we cannot interpret the phrase "maximum sentence imposed upon the inmate by the court" as meaning prison sentence *plus* period of parole. Accordingly, even if we agreed with the People that the meaning of that phrase could change without any change in the language of the statute, then we still could not hold that the term "maximum sentence," as used in section 17-2-201(5)(a), refers to anything more than the sentence to incarceration.[11]

## D. CONFLICTING PROVISIONS

As discussed above, under the version of section 17-2-201(5)(a) applicable to Martin, his term of parole could not extend beyond the four year term of imprisonment to which he was sentenced. Pursuant to that provision, discretion to grant parole is solely in the hands of the parole board, which may set a term of parole no longer than the unserved remainder of Martin's sentence at the time of release from incarceration. Martin was convicted of a sexual offense occurring before July 1, 1996, and his maximum sentence of incarceration under the plea agreement was four years. If this section were the only provision bearing on this case, then it would clearly follow that the five-year term of parole imposed by the sentencing court is invalid. However, the full statutory picture is more complicated, as becomes apparent once we consider sections 17-22.5-403 and 18-1-105.

Section 17-22.5-403(7)(a), 6 C.R.S. (1999) states in pertinent part that:

> For any offender who is incarcerated for an offense committed on or after July 1, 1993, upon application for parole, the state board of parole ... shall determine whether or not to grant parole. The state board of parole, if it determines that placing an offender on parole is appropriate, shall set the length of parole at the mandatory period of parole established in section 18-1-105(1)(a)(V), C.R.S.

This provision was enacted in 1993. *See* ch. 322, sec. 4, § 17-22.5-403, 1993 Colo. Sess. Laws 1975, 1980. That is, section 17-22.5-403(7)(a) took effect after section 17-2-201(5)(a) was originally enacted in 1979 but before section 17-2-201(5)(a) was amended to

11. The dissent makes yet another argument, distinct from the People's alternative argument, that the plain meaning of the term "maximum sentence" allows for the imposition of a five-year period of mandatory parole, pursuant to section 18-1-105(1)(a)(V)(C), even if the discretionary parole scheme applies. We first note that this argument is a variant of the argument offered by the People, and is not in fact made by the People. The argument, as presented by the dissent, reduces the conflict between the discretionary and mandatory parole schemes to a difference in the length of the parole period, overlooking the fact that mandatory parole is imposed by the trial court, whereas under discretionary parole, the parole board has the sole authority to set the length of parole terms. Our understanding of the differences between mandatory parole and discretionary parole, as explained here and in *Craig* and *Benavidez,* illustrate the fallacy of this argument. As such, further explication of this position is unnecessary.

its present form in 1996.[12] By the plain language of both section 17-2-201(5)(a) and section 17-22.5-403(7)(a), each statute applies to the determination of Martin's parole. His offense occurred before July 1, 1996, so section 17-2-201(5)(a) applies to his case. However, because his offense occurred after July 1, 1993, section 17-22.5-403(7)(a) also apparently applies.

The problem with applying both provisions to Martin's case lies in the fact that section 17-22.5-403(7)(a) requires that the length of parole be pursuant to section 18-1-105(1)(a)(V). According to the version of section 18-1-105(1)(a)(V) in effect when Martin entered into his plea agreement, any person convicted of a sexual assault committed on or after July 1, 1993, is subject to a mandatory period of parole of five years. *See* § 18-1-105(1)(a)(V)(C), 6 C.R.S. (1997). This provision initially was enacted in 1993 and covered all sex offenders, as defined in part four of article three and part three of article six of Title 18. *See* ch. 322, sec. 7, § 18-1-105(1)(a)(V)(C), 1993 Colo. Sess. Laws 1975, 1982.

Because section 18-1-105(1)(a)(V)(C) [13] requires that sex offenders serve a mandatory five-year period of parole, it is facially inconsistent with section 17-2-201(5)(a), which covers sex offenses committed prior to July 1, 1996, but which allows for discretionary parole of up to a maximum of five years. We therefore agree with the court of appeals that section 17-2-201(5)(a) and section 18-1-105(1)(a)(V)(C) cannot both be given effect in this case. *See Martin*, 987 P.2d at 925. Consequently, our task becomes to determine which statute takes precedence. Because neither provision's plain language presents a clear and unambiguous answer to that question, we must resort to additional rules of statutory construction to resolve this issue.

*See Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584. To that task we now turn.

## E. SPECIAL PROVISION PREVAILS

We have determined that the sex offender discretionary parole statute, section 17-2-201(5)(a) is irreconcilable with the mandatory parole scheme of sections 17-22.5-403(7) and 18-1-105(1)(a)(V). If a conflict between two statutory provisions is irreconcilable, a special or local provision prevails as an exception to a general provision, unless the general provision is the later adoption and the legislative intent is that the general provision prevail. § 2-4-205; *Bainbridge*, 929 P.2d at 716 n. 4 (Vollack, C.J., dissenting). We hold here that section 17-2-201(5)(a) is a specific provision which prevails over the general felonious offender sentencing provision of section 17-22.5-403(7), and thus, section 18-1-105(1)(a)(V) does not apply in this case. This interpretation of these statutes acknowledges the general rule of statutory construction that a specific provision acts as an exception to a general provision. *Bainbridge*, 929 P.2d at 716 n. 4 (Vollack, C.J., dissenting). As such, our holding allows for sections 17-2-201(5)(a) and 17-22.5-403(7) to function harmoniously without completely discarding either one. *See id.* Accordingly, under our rules of statutory construction, we conclude that sex offenders convicted of offenses committed prior to July 1, 1996, are subject to a period of discretionary parole no longer than the maximum length of the prison sentence or five years, whichever is less.

We begin by looking at section 17-22.5-403(7), enacted in 1993. This statute requires that all persons convicted of felonies on or after July 1, 1993, be placed on parole, if the parole board determines that parole is appropriate, under the guidelines set forth in section 18-1-105(1)(a)(V). *See* ch. 322, sec. 4, § 17-22.5-403(7), 1993 Colo. Sess. Laws 1975,

**12.** It should be noted that section 17-22.5-403(7)(a) was amended in 1998 in a manner inessential to resolving the case before us. *See* ch. 303, sec. 12, § 17-22.5-403(7)(a), 1998 Colo. Sess. Laws 1278, 1292. Subsection (7)(b) was enacted at that same time, and calls for the parole board to determine if parole is appropriate for offenders whose crimes occurred on or after November 1, 1998, and to fix the term of parole as provided in section 16-13-806. *See*

§ 17-22.5-403(7)(b), 6 C.R.S. (1999); ch. 303, sec. 12, § 17-22.5-403(7)(b), 1998 Colo. Sess. Laws 1278, 1292.

**13.** Unless otherwise indicated, for the balance of this opinion we refer to the versions of the relevant statutes in effect when the defendant's sentencing occurred in May 1997.

1980. Section 17-22.5-403(7) functions, for all intents and purposes, as a threshold provision through which convicted felons must pass before arriving at the sentencing schedules of section 18-1-105(1)(a)(V). Thus, our analysis must focus on the relationship between sections 17-22.5-403(7) and 17-2-201(5)(a) and their treatment of sex offenders.

Depending upon the outcome of our analysis, one of two results is possible. If, for example, we were to conclude that section 17-22.5-403 takes precedence over section 17-2-201(5)(a), then we would be required to apply the mandatory parole provisions of section 18-1-105(1)(a)(V). However, if we were to conclude that section 17-2-201(5)(a) acts as an exception to section 17-22.5-403(7), we would then automatically turn to section 17-2-201(5)(a) for guidance on sex offender parole. Accordingly, under the rules of statutory construction, we first look to whether section 17-22.5-403(7) is a general or specific provision.

By its terms, section 17-22.5-403(7) applies generally to all felony offenders convicted on or after July 1, 1993, even if the schedule of parole for various classes of offenders varies under section 18-1-105(1)(a)(V). Section 17-22.5-403 states that "for *any* offender" incarcerated for an offense occurring on or after July 1, 1993, the mandatory parole provisions of section 18-1-105(1)(a)(V) apply. § 17-22.5-403(7) (emphasis added). Nowhere in section 17-22.5-403(7) is any specific reference made to the determination of length of parole for sex offenders or any other type of special offender.[14] As such, we conclude that section 17-22.5-403(7) is a general provision. We must now turn to section 17-2-201(5)(a) to determine whether it is a general or specific provision.

Unlike section 17-22.5-403(7), which generally groups together the various types of offenders, section 17-2-201(5)(a) applies specifically to sex offenders. In the 1979 version of section 17-2-201(5)(a), sex offenders, as defined in section 16-13-202(5), 8A C.R.S.

(1973), were set apart from the general group of felons who were otherwise controlled by the sentencing and parole schemes of sections 17-22.5-403 and 18-1-105. Ch. 157, sec. 12, § 17-2-201(5)(a), 1979 Colo. Sess. Laws 662, 667. In *Thiret v. Kautzky,* 792 P.2d 801 (Colo.1990), this court recognized that parole for a sex offender convicted of an offense occurring after July 1, 1979, but before July 1, 1985, was subject to the discretion of the state board of parole. 792 P.2d at 805. In fact, such an interpretation was argued by the DOC in the hopes of removing sex offenders from the mandatory parole provisions in place at that time. *Id.* In that case we concluded that section 17-2-201(5)(a) not only included offenders sentenced pursuant to the Sex Offenders Act, but also all persons convicted of a sex offense more generally. *Id.* at 806.

Because we presume that the legislature is aware of our previously expressed understanding of specific language, we may assume that the legislature was aware, when they enacted sections 17-22.5-403 and 18-1-105(1)(a)(V) in 1993, of the fact that sex offenders are treated differently from the general pool of felons in the statutes because of the specificity of section 17-2-201(5)(a). *Swain,* 959 P.2d at 430-31; *Vaughan,* 945 P.2d at 409; *Tompkins,* 197 Colo. at 570-71, 595 P.2d at 243-44. Furthermore, because section 17-2-201(5)(a) specifically addresses discretionary parole for sex offenders, we construe the provision as specific. As such, section 17-2-201(5)(a) is an exception to the general sentencing scheme in place for felons, and carves out a distinct niche for determining punishments appropriate for sexual offenders.

Having concluded that section 17-2-201(5)(a), as enacted in 1979, was specific, we further conclude that when the General Assembly amended section 17-2-201(5)(a) in 1996, it merely affirmed an exception to the mandatory parole regime set forth in the 1993 enactment of section 17-22.5-403. In

---

**14.** Section 17-22.5-403(7) does discuss the state board of parole's duty to reconsider granting parole to sex offenders once every three years, but no reference is made to actually establishing the length of parole for such offenders. § 17-22.5-403(7). Thus, insofar as section 17-22.5-403(7) makes any specific reference to sex offenders, such reference is not in conflict with section 17-2-201(5)(a), and therefore, does not affect our analysis.

those 1996 changes made to section 17-2-201(5)(a), the legislature broadened the group of sex offenders who would fall under the governance of the board, and set the end date of effectiveness for the section at July 1, 1996. Ch. 280, sec. 6, § 17-2-201(5)(a), 1996 Colo. Sess. Laws 1578, 1584. Specifically, the post 1996 version of section 17-2-201(5)(a) now applies to a subclass of those felony offenders who were convicted before July 1, 1996, of a sexual offense as defined in section 18-3-412.4(1).[15] *See* ch. 280, sec. 6, § 17-2-201(5)(a), 1996 Colo. Sess. Laws 1578, 1584. Such offenders are subject to a discretionary parole term by the terms of the statute. § 17-2-201(5)(a). The parole board is empowered under the amended statute to set the parole term at no longer than the maximum sentence of incarceration or five years, whichever is less. *Id.*

The broadening of the class of offenders does not signify that section 17-2-201(5)(a) changed from a specific provision to a more general one. Instead, it signifies the legislature's continuing desire to set sex offenders apart from other offenders for the purpose of parole period determination. Furthermore, limiting the time frame for which this section applies, namely until July 1, 1996, merely shows the General Assembly's manifest intent that this discretionary parole provision apply to sex offenders at all times before that date. As such, the amendments made in 1996 did not change section 17-2-201(5)(a) from a specific provision to a general one.

It has been argued that, because section 17-2-201 generally outlines the powers of the state board of parole, it is a general provision solely governing the functions of that board. However, as we have discussed above, the language of section 17-2-201(5)(a) suggests otherwise. Consequently, we are compelled to conclude that section 17-2-201(5)(a) is a special provision.

 As we stated above, when analyzing a general provision that conflicts with a special provision, our first task is to attempt to give effect to both provisions. § 2-4-205. However, it is not possible to give effect in this case to both the discretionary parole guidelines of section 17-2-201(5)(a) and the mandatory parole provision of section 17-22.5-403. Section 17-2-201(5)(a) mandates that Martin is subject to a parole term of no longer than four years. Section 17-22.5-403 provides for Martin's parole term to be set by section 18-1-105(1)(a)(V)(C), which requires a mandatory five-year parole period. If both provisions cannot be given effect, then we are required to view the special provision as an exception to the general one. § 2-4-205. Accordingly, we hold that section 17-2-201(5)(a) functions as an exception to section 17-22.5-403, by creating a specialized schedule of parole for sex offenders.[16] *See, e.g., People v. Luciano*, 662 P.2d 480, 482–83 (Colo.1983)(holding that Colorado Liquor Code violations are excluded from the general fraud provisions).

 We further conclude that the 1996 amendments to section 17-2-201(5)(a) did not significantly change sex offender parole. As a specific provision, section 17-2-201(5)(a) applies to sex offenders committing crimes before July 1, 1996. The enactment of the 1996 amendments does not show that the legislature meant to *return* to a scheme of discretionary parole for sex offenders. Instead, the amendments evidence the conclusion that the

---

**15.** We note that section 18-1-105(1)(a)(V)(C) purports to impose a five-year period of mandatory parole upon sex offenders, as defined in section 18-23-412.4(1). § 18-1-105(1)(a)(V)(C). However, because we conclude that section 17-2-201(5)(a) acts as an exception to the general threshold provision of section 17-22.5-403(7), and thus governs sex offender parole, we need not discuss the effects of section 18-1-105(1)(a)(V)(C). Furthermore, while we note that the 1996 amendments to section 17-2-201(5)(a) expanded the class of sex offenders subject to its provisions, we do not address the unraised issue of those convicted offenders in the expanded class who were originally sentenced to mandatory parole under the determinate sentencing scheme of sections 18-1-105(1)(a)(V)(A) and (C), and who now may be incorporated into the discretionary parole scheme of section 17-2-201(5)(a).

**16.** Section 2-4-205 also presents an exception to its rule that a special provision prevails over a general one if the two provisions cannot both be given effect: the general provision prevails if it was enacted after the special provision and the manifest intent is that the general one prevail. However, section 17-2-201(5)(a) was enacted after section 17-22.5-403, so this exception does not apply here.

adoption of the determinate sentencing scheme in 1993 did not repeal sex offender discretionary parole *sub silentio.* As we noted in *Uberoi v. University of Colorado,* a general statute will not be interpreted to repeal a specific statute unless there is clear and unmistakable intent to do so. 686 P.2d 785, 788 (Colo.1984); *see also Property Tax Adm'r v. Prod. Geophysical Servs.,* 860 P.2d 514, 518 (Colo.1993)("[A]n intent to repeal by implication to be effective must appear clearly, manifestly, and with cogent force."); *People v. Burke,* 185 Colo. 19, 22, 521 P.2d 783, 785 (1974)("A statute that is specific in its terms is not necessarily repealed by a later statute which is general in terms."); *City & County of Denver v. Rinker,* 148 Colo. 441, 446, 366 P.2d 548, 550 (1961)("[F]or general legislation to work a repeal of an existing special provision the intent to do so must be clear and unmistakable."); *Casados v. People,* 119 Colo. 444, 448, 204 P.2d 557, 559 (1947)("Repeals by implication are not favored.... The courts will not hold to a repeal if they can find reasonable grounds to hold to the contrary."); *People ex. rel. Roberg v. Bd. of Comm'rs of Chaffee County,* 86 Colo. 249, 257, 281 P. 117, 120 (1929)("The common rule is that general statutes do not repeal special statutes by implication."). The weight of authority supports our conclusion that sections 17-22.5-403(7) and 18-1-105(1)(a)(V) did not repeal section 17-2-201(5)(a) by implication. In fact, the sheer mass of authority on the point that statutory repeal by implication is disfavored and that a general statute will not repeal an existing specific statute without clear and unmistakable intent, suggests that our holding here is axiomatic.

We conclude that, without any clear and unmistakable showing to the contrary, the legislature intended, between 1993 and 1996, to continue two separate systems of parole for felonious offenders; sex offenders were to be sentenced under the discretionary parole provisions of section 17-2-201(5)(a), and other offenders were to be governed under the provisions for mandatory parole in sections 17-22.5-403(7) and 18-1-105(1)(a)(V). Thus, we reiterate that the governance of sex offender parole continued to be controlled by section 17-2-201(5)(a) between 1993 and 1996 because

the legislature intended that result. To hold otherwise negates the clear statutory construction above.

Furthermore, we cannot hold that, in light of the enactment of mandatory parole in 1993, the legislature intended to change the import of the language found in section 17-2-201(5)(a). The People would have us infer that, because the General Assembly introduced a scheme of mandatory parole, that legislature must have meant for discretionary parole for sex offenders to either be repealed, or to be amended in such a way that it would incorporate the changes embodied in the mandatory parole statutes. As we noted above, the legislature made no amendment to the language in section 17-2-201(5)(a) in 1993, and when it did amend that section in 1996, the legislature did not change the phraseology we have analyzed here. Thus, we cannot infer from legislative silence that the meaning of the language in section 17-2-201(5)(a) changed because of the enactment of mandatory parole. Indeed, such a significant change requires an expressed demonstration of legislative intent. *See, e.g. United States v. Wells,* 519 U.S. 482, 495–96, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997)(refusing to infer congressional intent when, "We thus have at most legislative silence on the crucial statutory language, and we have frequently cautioned that it is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law." (internal quotation marks omitted)).

▮ It is important to note that, because we hold that section 17-2-201(5)(a) applies to sex offenders convicted of offenses occurring prior to July 1, 1996, Martin's parole is governed by this section because he committed an offense in 1993. The fact that Martin's plea bargain was in 1997, after the 1996 amendments, does not, however, affect the outcome in this case. Because Martin is a sex offender, as defined in section 16-13-202(5), 8A C.R.S. (1973), he fell into the category of individuals to whom section 17-2-201(5)(a), 8A C.R.S. (1986), applied. Thus, even if Martin had been sentenced prior to 1996, section 17-2-201(5)(a) would have applied to him. Therefore, the 1996 amendment of section 17-2-201(5)(a) does not change our analysis with

respect to Martin.[17] With or without the changes effected in 1996, Martin's parole would have still been discretionary parole governed by the state board under section 17-2-201(5)(a).

Accordingly, the trial court erred when it sentenced Martin to a five-year mandatory parole term. Pursuant to section 17-2-201(5)(a), the parole board is vested with the sole discretionary authority to grant Martin parole. That period of parole may not exceed the undischarged remainder of the maximum sentence of incarceration to which Martin was ordered. *See* § 17-2-201(5)(a).

## IV. CONCLUSION

We hold that, for persons convicted of sex offenses occurring prior to July 1, 1996, section 17-2-201(5)(a) is the specific provision that requires discretionary parole. The scheme of determinative sentencing and mandatory periods of parole, as detailed in section 18-1-105(1)(a)(V)(A), is a general sentencing provision which does not apply to persons convicted of sex offenses. Therefore, we reverse the judgment of the court of appeals affirming the trial court's denial of Martin's Crim. P. 35(c) motion and remand the case to the court of appeals. The court of appeals is directed to remand the case to the trial court to grant the defendant's Crim. P. 35(c) motion challenging the invalid five-year period of mandatory parole.

Justice COATS dissents, and Justice KOURLIS and Justice RICE join in the dissent.

Justice COATS, dissenting:

The majority holds that in 1993, when the General Assembly changed the sentencing scheme to mandate that felony sentences include a period of parole supervision extending as much as five years beyond the term of incarceration imposed by the court, it intended to exempt sex offenders, despite expressly naming them and singling them out for the longest possible period of "mandatory parole." The majority reasons that the General

Assembly's intent to exempt sex offenders is evident from its failure to simultaneously amend a fourteen-year-old statute, in a title of the revised code devoted to the powers and duties of the State Board of Parole, specifying that parole may not exceed the maximum sentence imposed by the court.

While legislative intent may be difficult to discern from the seemingly enigmatic series of amendments to the sentencing and parole scheme in this state, and although the available legislative history undeniably evidences a lack of both understanding and agreement about the effect of a number of those amendments, I find nothing in or since the 1993 return to a kind of mandatory parole to suggest any inclination on the part of the General Assembly to release any felony sex offenders into the community without first subjecting them to the discretion of the parole board. I consider this possibility to be the single most glaring consequence of the majority's construction. Because I believe that a correct application of the various aids to statutory construction, developed precisely for the purpose of deriving legislative intent from ambiguous and conflicting provisions, leads to the conclusion that the 1993 mandatory parole provisions do not conflict with existing provisions and would prevail in any event, I respectfully dissent.

## I.

In 1993, the General Assembly amended the already complex felony sentencing statute, § 18-1-105, 8B C.R.S. (1993 Supp.), by adding to felony sentences a period of parole, the service of which could be compelled after and in addition to the term of years imposed by the court, rather than merely in place of a portion of it. *See* ch. 322, sec. 7, § 18-1-105, 1993 Colo. Sess. Laws 1981, 1981-84; *Craig v. People*, 986 P.2d 951, 963 (Colo.1999). This was done, at least in part, to insure the post-incarceration supervision of offenders who were not offered, or chose not to accept, parole release prior to the completion of their entire sentence to incarceration. *See Hearing on H.B. 93-1302 Before the House Judiciary*

---

**17.** Neither party has argued, and thus we do not address, any constitutional implications of imposing the version of the sentencing and parole

statutes in effect at the time of Martin's offense as opposed to imposing the version in effect at the time of his sentencing.

*Committee*, 59th General Assembly, 1st Reg. Sess. (Feb. 16, 1993). The length of the additional period of parole--from two to five years--was generally set according to the classification of the particular offense, although the parole board retained the discretion to shorten the term based on the board's assessment of the rehabilitative progress of the individual offender. *See* § 18-1-105(1)(a)(V)(A) & (B), 6 C.R.S. (2000). With regard to felony offenses of "unlawful sexual behavior" and "incest," however, the statutory parole term permitted over and above the offender's sentence to confinement was expressly set at the full five years, regardless of the classification of the specific offense. § 18-1-105(1)(a)(V)(C).

Until this significant policy shift in 1993, parole supervision in Colorado had (except for a short period beginning in 1979) consisted of nothing more than an alternate method of serving a sentence to incarceration. *See Craig*, 986 P.2d at 958 n. 3. After an offender became eligible, it was within the discretion of the parole board to decide whether, when, and for how much of the remainder of his prison sentence to release him to parole supervision. § 17-2-201(5)(a), 8 C.R.S. (1978). The incidents and parameters of parole were generally treated in title 17 of the revised statutes, entitled "Corrections" (formerly "Parole and Probation"), rather than in title 18, the "Criminal Code." In 1977, with the repeal and reenactment of title 17, the statutory provisions for the creation and terms of the State Board of Parole and its general powers and duties were recodified as section 17-2-201. *See* ch. 223, sec. 10, § 17-2-201, 1977 Colo. Sess. Laws 903, 911-14. Subsection 17-2-201(5)(a) reflected the board's discretion to grant or refuse to grant parole and to set the conditions and terms of parole, not to exceed the maximum sentence imposed by the court.

In 1979, the General Assembly radically changed the state's felony sentencing scheme, creating "presumptive ranges of penalties" from which a specific term of years was to be imposed by the court, and mandating the release of all but limited classes of felony offenders for a one-year period of parole supervision, as soon as they accumulated the requisite "good" and "earned" time credits. *See* ch. 157, sec. 10, § 16-11-310, 1979 Colo. Sess. Laws 666; ch. 157, sec. 16, § 18-1-105, 1979 Colo. Sess. Laws 669, 669-70. Since parole release for class 2 through 5 felony offenders became mandatory as soon as they were eligible, the parole board lost the discretion to grant or deny their parole. Although the board retained the discretion to set the conditions of parole and discharge an offender from parole when it considered him sufficiently rehabilitated, the length of parole ceased to be related to the unserved remainder of the sentence to confinement. Even upon revocation of parole for a violation, the offender's reincarceration and reparole were limited only by the requirement that together they not exceed one year. *See* ch. 157, sec. 14, § 17-22.5-103, 1979 Colo. Sess. Laws 667, 668.

As a consequence of the 1979, presumptive sentencing scheme and its one-year mandatory parole requirement, subsection 17-2-201(5)(a) was amended to reflect its greatly reduced applicability. The discretion of the parole board described in subsection (5)(a) was expressly limited to persons convicted of felonies committed before July 1, 1979; those convicted of misdemeanors, to which the one-year parole provision did not apply; those sentenced as habitual criminals to mandatory terms of twenty-five to fifty years; those receiving mandatory life sentences, who at that time became eligible for parole after serving twenty calendar years; and those convicted of the specific sex offenses enumerated in the Colorado Sex Offenders Act of 1968, who could be sentenced by a court that acquired jurisdiction under the provisions of the Act to an indeterminate term of one day to life.[1] *See* ch. 157, sec. 12, § 17-2-201(5)(a), 1979 Colo. Sess. Laws 667, 667.

---

1. The majority notes that the 1979 amendment to subsection 17-2-201(5)(a) also restricted the parole board's discretion in determining the duration of parole by reducing the upper possible boundary from the remainder of the offender's sentence to five years, if that term would be shorter. That limitation, however, was not directed specifically at sex offenders but applied to the entire group of crimes over which the Board retained discretion, affecting only felonies potentially involving life or very long sentences. At the

Although the parole scheme was radically amended again in 1985, returning discretion to the parole board to grant or refuse to grant parole for all class 2, 3, 4 and 5 felony offenders, *see* ch. 145, sec. 4, § 17-22.5-303(6), 1985 Colo. Sess. Laws 648, 649, and was substantially amended yet a third time in 1990, abolishing the concept of good time altogether and substantially changing the requirements for parole eligibility and duration and the consequences of parole revocation, *see* ch. 120, sec. 19, § 17-22.5-401-405, 1990 Colo. Sess. Laws 946, 947-52, subsection 201(5)(a) was not amended to reflect any of these changes.[2] When the General Assembly added subsection 18-1-105(1)(a)(V) in 1993, once again subjecting offenders to periods of parole supervision that were neither related to nor limited by the unserved remainder of the term of confinement imposed by the court, section 17-2-201(5)(a) had not been amended since 1979.[3] By 1993 it had come to reflect a mere fraction of the parole board's actual discretion to grant or refuse to grant parole and by its own terms applied only to those offenders who had never been subject to the 1979 mandatory parole provision and over whom the board had never lost the discretion to grant or deny parole.

## II.

By subjecting a class of sex offenders covered by subsection 17-2-201(5)(a) to the pos-

sibility of parole supervision beyond the term of confinement imposed upon them by the court, the 1993 amendments raised the question whether the General Assembly, rather than again simply extending additional discretion to the parole board without reference to subsection 201(5)(a), had in fact given the board discretion to do something that subsection 201(5)(a) expressly prohibited. Unlike the 1979 mandatory parole provision, the 1993 provision does not require the release of an offender when he becomes eligible and therefore does not suggest any conflict with the discretion of the parole board to grant or refuse to grant parole. Similarly, although section 18-1-105(1)(a)(V)(C) sets the mandatory sentence to parole for sex offenders at five years, the parole board retains the discretion even under that provision to determine what portion of the term the offender must actually serve. § 18-1-105(1)(a)(V)(B). Rather, it is subsection 17-2-201(5)(a)'s prohibition against exceeding the lesser of the maximum sentence imposed by the court or five years with which the majority finds a conflict.

Statutes should be construed to give effect to the intent of the General Assembly. *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000). In ascertaining that intent, the terms used in statutes should be given their plain meaning,

same time, parole for the vast majority of felony offenders was limited to one year.

2. Since the parole scheme applying to felons generally between 1985 and 1990 limited parole to no more than five years, *see* § 17-22.5-303(6), it presented no conflict with section 17-2-201(5)(a). When the parole scheme was rewritten in 1990, among other things it eliminated the five-year limitation on parole. *See* § 17-22.5-403(7). Until the majority's statement today, we had not held that section 403(7), added in 1990, was a general provision that did not apply to sex offenders.

3. Although section 17-2-201(5)(a) had not been amended, amendments to other statutes and case law interpretations had significantly altered the effect and applicability of the statute. The sentence for offenders convicted of class 1 felonies had become life without the possibility of parole, ch. 322, sec. 8, § 18-1-105, 1993 Colo. Sess. Laws 1983, 1983, and therefore despite the language of subsection 201(5)(a), the parole board could never exercise discretion to grant parole to

a class 1 offender. In July 1993, the habitual criminal statute was substantially amended, eliminating the life and twenty-five to fifty-year sentences previously required and creating a scheme in which the habitual criminal's sentence merely became a multiple of the maximum sentence in the presumptive range for his particular class of felony. *See* ch. 322, sec. 1, § 16-13-101, 1993 Colo. Sess. Laws 1975, 1975. Perhaps most significantly, in 1990 this court held that despite the intent of the bill's sponsor and the controlling administrative interpretation of the Parole Board until 1989, to the effect that the sex offenders referred to in subsection 17-2-201(5)(a) included only those actually sentenced pursuant to the Colorado Sex Offenders Act, when properly construed subsection 201(5)(a) includes all those sex offenders who committed offenses for which they *could have been* sentenced pursuant to the Act. *See Thiret v. Kautzky*, 792 P.2d 801 (Colo.1990). The effect of this construction was to return the parole release decision for most felony sex offenses committed before 1985 to the discretion of the parole board rather than requiring release as soon as the offender became eligible.

but when terms are susceptible of more than one meaning, other aids may be relied upon to discover legislative intent. Also it is presumed that the legislature intended for statutes dealing with the same subject to form a consistent whole, and therefore they should be construed harmoniously where possible. *Yuma County Bd. of Equalization v. Cabot Petroleum Corp.*, 856 P.2d 844, 849 (Colo. 1993).

The majority holds that the words "maximum sentence" as used in subsection 201(5)(a) can only refer to the term of incarceration imposed by the sentencing court, and therefore it finds a parole term that could extend beyond the unserved remainder of that term of incarceration to be in conflict with subsection 201(5)(a).[4] The plain meaning of the term "maximum sentence," however, is not so limited. Rather than the maximum prison sentence or period of incarceration, confinement, or institutionalization of any kind, "maximum sentence," on its face, refers to the largest or longest penalty to which the offender is sentenced.[5] Even though not served in an institution, parole is unquestionably an infringement on an offender's liberty and therefore a part of his penalty. *See People v. McCullough*, 6 P.3d 774, 779 n. 10 (Colo.2000). Since 1993, when the General Assembly once again changed parole from an alternate method of serving a sentence of confinement into a separate and additional component of the overall sentence, the of-fender's sentence has included not only a term of years for which he can be confined but also an additional period of parole supervision during which his liberty can be further limited.

In a closely related context, I believe this court has already recognized as much by construing the "possible penalty or penalties" of which a defendant must be advised before acceptance of his guilty plea to include not only the term of incarceration that may be imposed but also the additional period of parole mandated by the 1993 amendments. *Benavidez v. People*, 986 P.2d 943, 948 (Colo. 1999) ("[A] plea agreement calling for a sentence of 'five years, D.O.C.' should be understood as envisioning a sentence that consists of both a five year term in a Department of Corrections facility, and any additional period of mandatory parole demanded by section 18-1-105(1)(a)(V)(A)."); *Craig*, 986 P.2d at 959, 963 (noting that "mandatory parole is a statutorily prescribed sentence component that attaches automatically to any sentence involving imprisonment" and a proper advisement must indicate that a "parole term occurs after, in addition to, or distinct from any period of imprisonment"); *cf. People v. Hunter*, 738 P.2d 20, 22 (Colo.App.1986) (holding that under the 1979 presumptive sentencing provision, a five-year term of probation did not exceed the "maximum authorized sentence"—four years of confinement plus one-year of mandatory parole).[6]

---

4. The majority also explains its reasons for holding that the legislature intended "maximum sentence" to refer only to the unserved remainder of the offender's sentence. Understood this way, serving more of a prison sentence shortens the permissible term of parole supervision. The statute therefore not only imposes an absolute limit of five years but also prohibits parole supervision from continuing beyond the remainder of the offender's sentence, no matter how short that period may be. While this may not be readily apparent from the language of the statute, which could be understood to permit a period of parole supervision for the same number of years (up to five) as the defendant's sentence, I do not disagree that this is the clear import of our prior holdings.

5. I largely agree with the majority's explanation that the word "maximum" in the term "maximum sentence" really adds nothing except in the context of an indeterminate sentencing scheme in which both a "minimum" and "maximum" sentences are imposed, as existed in Colorado at the time those words were written. Maj. op. at 852–853. For that reason, among others, I do not find it significant that "maximum sentence," as a subdefinition within the term "sentence" in *Black's Law Dictionary*, is defined in terms of "custody." *See* maj. op at 859. Although general definitions are of minimal assistance, the primary term "Sentence" is defined in terms of "the punishment to be inflicted, usually in the form of a fine, incarceration, or probation," and the "legal consequences of guilt." *Black's Law Dictionary* 1362-63 (6th ed. 1990).

6. In my opinion, the majority's explanation of *Benevidez* and *Craig* as standing for the opposite proposition confounds the two different holdings of those cases. While we held that an agreement to a "cap" or limitation on the term of years could not reasonably be understood, in the absence of something more, to be an agreement to limit anything but the imprisonment component

The precise content of the term "maximum sentence" has varied greatly since 1969 when the term appeared in the statutes to limit the duration of parole.[7] *See* ch. 111, sec. 7, § 39-18-1(4), 1969 Colo. Sess. Laws 289, 290. Unlike today, the term initially applied to a sentencing scheme dating back to 1899 under which the sentence imposed by the court actually included both a "minimum" and "maximum" sentence. *See* ch. 104, sec. 1, 1899 Colo. Sess. Laws 233, 233. Since 1979, however, the sentencing scheme has required the imposition of a specific term of years, somewhere between one-half of the minimum and twice the maximum presumptive sentence to incarceration. *See* § 18-1-105(6), 8 C.R.S. (1979 Supp.). The maximum possible sentences to incarceration have changed over this period, in some cases literally doubling, and at times (at least between 1979 and 1981 and again since 1993), the total sentence for most felonies has included an additional specified period of parole. *See, e.g.,* § 18-1-105(1)(a), 8 C.R.S. (1979 Supp.); § 18-1-105(1)(a)(V)(A), 8B C.R.S. (1993 Supp.). As with the term "possible penalty or penalties," the content of the term "maximum sentence" necessarily changes as the component parts of a felony "sentence" change.

Acknowledging the presumption that the legislature did not intend to adopt conflicting provisions governing the same subject, maj. op. at 851, and the corresponding duty of courts to construe a statutory scheme to give harmonious and sensible effect to all its parts, *id.,* the majority nevertheless finds an irreconcilable conflict by concluding that the word "sentence" as used in section 17-2-201(5)(a) is susceptible of no other meaning than "incarceration." *Id.* at 859. Unlike the majority, I do not find evidence that either this court or the General Assembly has previously given the term such a narrow meaning. Neither the term "sentence," nor "maximum sentence," is specifically defined as a term of art in the statute. In the Criminal Code generally, the term has been consistently used synonymously with "penalty" or "penalties which are authorized upon conviction." *See* § 18-1-105(1)(a)(V)(A).[8] Within its provisions for "Imposition of Sentence," *see* Title 16, Art. 11, the Criminal Procedure Code treats "Sentences to Imprisonment" as but one alternative sentence, *see* Part 3, along with other sentencing alternatives like "Restitution," *see* Part 1, "Probation," *see* Part 2, "Fines," *see* Part 5, and "Community Service," *see* Part 7.

of the defendant's sentence, nevertheless we made clear that the defendant's entire sentence includes the parole component, which the court is obliged to impose by statute and of which the defendant must therefore be advised before he can be considered aware of the possible penalty. Similarly, I understand our holding in *People v. Johnson,* 13 P.3d 309 (Colo.2000), to distinguish a statutorily required parole term only from an "offender's sentence," as that term is used in section 17-27-105(1)(e) in reference to the resentencing of a defendant who was initially sentenced to Community Corrections. Expressly limiting our construction to this statute, which permits sentencing without a hearing as long as the "offender's sentence" does not exceed his original sentence, we concluded that the purposes of the statute were served by limiting the term to those portions of the sentence over which the sentencing court actually had discretion. We never suggested, however, that mandatory parole should not be considered part of a sentence to imprisonment or confinement in the department of corrections, indicating a number of times the exact opposite. *See, e.g., id.* at 314 ("Mandatory parole remains a distinct element of the overall sentencing regime and arises only by operation of section 18-1-105 if the defendant is sentenced to the DOC."). Although we recog-

nized that mandatory parole is beyond the discretion of the sentencing court, we also acknowledged that "[i]n a technical sense, the trial court imposes the period of mandatory parole when it sentences an offender to the DOC." *Id.* at 313.

7. The general notion of limiting a term of parole to the maximum sentence imposed appears to have been expressed as early as 1958 when the sentencing statute was amended in part to (more narrowly) prohibit a person's parole term from exceeding "the maximum term for which such person may be imprisoned." Ch. 36, sec. 6., § 39-17-3(3)(b), 1958 Colo. Sess. Laws 216, 217.

8. The majority relies in part for its conclusion on the table in section 18-1-105(1)(a)(V)(A), which includes a column designated "Maximum Sentence," specifying particular numbers of years associated with each level of felony. As the accompanying text makes clear, the table merely designates the maximum and minimum terms of imprisonment in the "presumptive range." Since even a defendant's sentence to prison may include a term of years as much as twice the maximum presumptive sentence, it is clear that the column could not possibly be intended to indicate the "maximum sentence" that either is or could be imposed by the court.

Similarly, I find no indication that this court has defined "sentence" or "maximum sentence" in this context, except to recognize that during periods in which the sentencing scheme did not permit any infringement upon a convicted felon's liberty beyond his maximum term of incarceration, his maximum sentence equaled his maximum term of incarceration. *See, e.g., Duran v. Price,* 868 P.2d 375 (Colo.1994) (construing term as applied to indeterminate sentence from 1972, which included both a minimum and maximum sentence to incarceration, marking the point at which a defendant became eligible for parole and the point beyond which his parole could not extend). Our failure to previously consider a parole term in assessing the length of a "maximum sentence" within the meaning of section 17-2-201(5)(a) does not reflect any decision to limit the meaning of the term to incarceration regardless of the nature of the sentencing scheme but merely reflects the fact that the legislature had not previously defined sentences over which the Parole Board had discretion to include a period of parole extending beyond the maximum term of incarceration. Where the legislature has chosen to limit the discretion of the Parole Board in relation to the length of a sentence rather than by imposing a specific time limit, it necessarily extends the limits of parole board discretion by extending the length of the overall sentence.

Finally, giving the term "maximum sentence" its plain meaning—the longest sentence that the defendant can be made to serve—in no way changes the incidents of parole or permits any longer parole term than is prescribed by section 18-1-105(1)(a)(V)(C).[9] The mandatory parole statute sets the term of parole for sex offenders at five years. While that statute represents a substantial policy change from the existing scheme by permitting parole supervision even of an offender who serves his full sentence to incarceration, it does not alter parole eligibility requirements, which still permit many offenders to be paroled after serving less than half of their sentences to incarceration. Similarly, although the mandatory parole provisions continue to permit the parole board to discharge a defendant whenever it no longer considers parole supervision necessary, they do not permit the expansion of the statutorily prescribed term, and therefore no matter how much time remains on an offender's sentence to incarceration when he is released on parole, he may not be made to serve more than five years of parole for his initial offense.

Even if the plain meaning of the term did not compel an understanding including the additional period of parole, I believe it would at least be a permissible construction to avoid conflict with the newer, mandatory parole requirement for felony sex offenders and harmonize the sentencing and parole board statutes. Whether or not the General Assembly actually considered the meaning of the term "maximum sentence" or the way in which that concept limited the Parole Board's discretion relative to the offenses delineated in section 17-2-201(5)(a), it clearly changed the nature of the sentencing scheme with regard to parole supervision and it expressly included sex offenses within those changes. If the words of the statutes permit a reconciling construction that furthers the intent of the legislature, that construction should be adopted.

### III.

In any event, I do not agree that sex offenders would be exempt from mandatory parole even if the statutes in question were actually irreconcilable because in that case I believe the 1993 sentencing statute rather than the 1979 parole board statute would prevail. When statutes dealing with the same subject simply cannot be harmonized, a special provision prevails as an exception to a

---

**9.** The majority criticizes, under the heading of "People's Alternate Argument," a construction of the term "maximum sentence" urged by the People in a different case, involving offenses committed after the 1996 amendments to section 17-2-201(5). The majority characterizes that interpretation, which would apparently permit an expansion of an offender's mandatory term of parole by adding to it the unserved remainder of his term of incarceration, as illogical and creating a "hybrid discretionary parole." That suggested interpretation should not be confused with the plain meaning of the term advanced here, which in no way implies any discretion of the board to extend the mandatory term of parole set by statute.

general one, precisely because it is a clearer indication of the legislative intent with regard to the specific application. § 2-4-205; *People v. J.J.H.,* 17 P.3d 159, 163 (Colo.2001). I believe that the 1993 sentencing provision is related to the 1979 parole board provision as a special to a general statute. The 1993 sentencing statute singles out sex offenders for special treatment and expressly designates the applicable term of parole supervision, prohibiting any offender from avoiding that supervision, even by serving his entire sentence of confinement. By contrast, the general statute describing the powers and duties of the parole board deals with felony sex offenders only within the broader category of all offenders to whom the 1979, one-year mandatory parole requirement did not apply, and it addresses the length of parole merely by imposing a broad limitation on the board's discretion to supervise offenders for more than five years or after completion of their sentences.

Furthermore, where conflicting statutes are not related as general and specific statutes, the statute with the effective date that is latest in time prevails, *see* § 2-4-206, and even if the newer statute can be characterized as the more general, it still prevails if the manifest intent of the legislature is that it do so. *See* § 2-4-205. The 1993 revision of sex offender sentences in section 18-1-105(1)(a)(V)(C) is the later by some fourteen years, and even if it were the more general of the two, it expresses the "manifest intent" of the legislature that sex offenders be subject to the supervision of the parole board for as much as five years, whether or not that period extends beyond the time they could have been incarcerated. In light of its clarity, specificity, and substantial change in sentencing policy or philosophy, subsection 18-1-105(1)(a)(V)(C) must be understood to evidence a legislative intent to modify, create an exception to, or flatly overrule, any existing limitation on the parole board's discretion, that might conflict with it.

The majority does not directly address the intent of the legislature in adopting the new sentencing provision for sex offenders in subsection 18-1-105(1)(a)(V)(C) but chooses instead to compare subsection 17-2-201(5)(a) to the 1990 parole scheme, as amended in 1993 to account for the new mandatory parole sentencing requirements. *See* ch. 322, sec. 4, § 17-22.5-403, 1993 Colo. Sess. Laws 1975, 1978-80. Whether or not I were to agree, I do not find it meaningful to characterize subsection 17-2-201(5)(a) as a more specific parole provision than section 17-22.5-403 because the five-year mandatory parole requirement does not derive from section 17-22.5-403. It is expressly made a separate component of the sentence that must be imposed on felony sex offenders by subsection 18-1-105(1)(a)(V)(C). In addition to disagreeing with the majority's premise that the parole provision at section 403(7) acts as "a threshold provision through which convicted felons must pass before arriving at the sentencing schedules of section 18-1-105(1)(a)(V)," maj. op. at 861, I know of no authority for the suggestion that a clear, specific legislative mandate loses its effect as an expression of legislative intent by also being incorporated by reference in a more general provision.

IV.

In 1996 the General Assembly amended section 17-2-201 by adopting a new subsection (5)(a.5) and correspondingly limiting subsection (5)(a). *See* ch. 280, sec. 6, § 17-2-201, 1996 Colo. Sess. Laws 1584, 1584-85. The majority characterizes this amendment as confirmation that the General Assembly never intended for sex offenders to be subject to the 1993 mandatory parole provisions. Rather than perpetuating a limitation on sex offender supervision, when the amendments to subsection 201(5) are considered in the full context of the 1996 amendments of which they were but a small part, I think they evidence a clear legislative intent to insure that section 17-2-201(5) not have a limiting effect on the legislature's desire for increased supervision of sex offenders. In any event when "maximum sentence" is construed to include both confinement and the additional parole required by statute, the amended version of subsection 17-2-201(5)(a) is no more in conflict with subsection 18-1-105(1)(a)(V)(C) than was the unamended version.

These amendments were part of a larger bill (H.B. 96-1181), generally concerning of-

fenses involving unlawful sexual behavior, which contained twenty-two separate sections, dealing with, among other things, the admission of evidence of other sexual offenses, genetic testing of sex offenders, registration of sex offenders, juvenile sex offenders, and the confidentiality and sealing of records of sex offenders. *See* ch. 280, secs. 1-22, 1996 Colo. Sess. Laws 1578-1594. In conjunction with requiring sex offender registration, the bill defined "unlawful sexual behavior" to include a far broader range of offenses than either the Sex Offender's Act of 1968 or subsection 18-1-105(1)(a)(V)(C). Ch. 280, sec. 5, § 18-3-412.5(1), 1996 Colo. Sess. Laws 1581, 1581-83. An undeniable effect of the bill was to impose a variety of additional burdens of disclosure and supervision on a larger class of sex offenders. By its own terms, H.B. 96-1181 took effect on July 1, 1996 and applied only to offenses committed on or after that date. Ch. 280, sec. 21, 1996 Colo. Sess. Laws 1589, 1589-90.

For crimes committed on or after July 1, 1996, the new subsection 17-2-201(5)(a.5) did not include the five-year limitation of subsection (5)(a) and instead permitted parole supervision of persons convicted of the newly defined category of unlawful sexual behavior up to the maximum sentence imposed by the court. Ch. 280, sec. 6, § 17-2-201, 1996 Colo. Sess. Laws 1584, 1584-85. That portion of subsection (5)(a) referring to sex offenses as defined in the Colorado Sex Offenders Act of 1968 was correspondingly amended to refer instead to offenses within the new category of unlawful sexual behavior committed prior to July 1, 1996. *Id.* The addition of the new subsection expands both the range of sex offenders and the extent of the board's discretion to supervise sex offenders for crimes committed after 1996. Amending the existing subsection by reference to a date beyond which it is no longer applicable follows a formula used by the legislature elsewhere for

superceding a parole provision rather than repealing and completely eliminating it from the revised code.[10]

Considered in light of the other provisions of the bill, the addition of subsection (a.5) superceding a portion of subsection (a), and the express, prospective application of the bill as a whole, the amendatory language in subsection (a) was clearly intended to restrict subsection (5)(a) from applying to sex offenses in the future rather than to revive it or reverse the effect of earlier exceptions created by implication. Rather than confirming a legislative intent that subsection 18-1-105(1)(a)(V)(C) never take effect and remain a nullity from its inception, I believe the legislature's amendment of the parole board statute three years later (without reference to the mandatory parole provision) is more reasonably understood as evidence that the legislature did not perceive any conflict between the two statutes.

## V.

I therefore do not agree with the majority's conclusion that section 17-2-201(5)(a) should prevail in the event of a conflict, but perhaps more importantly I do not think it is necessary. If anything is clear from the convoluted history of Colorado's sentencing and parole scheme, it is that in 1993 the legislature intended to prevent felony offenders, and especially sex offenders, from avoiding parole supervision that the board considered necessary, by first completing or substantially completing their sentences to incarceration. Whether or not anyone involved in the enactment of the new mandatory parole scheme was even aware of a limitation on parole board discretion in title 17, the 1993 mandatory parole provision for sex offenders is easily harmonized with that limitation by giving the term "maximum sentence" its plain meaning. Were the two statutes not so

---

10. *See, e.g.,* § 17-22.5-303, 6 C.R.S. (2000) (providing earlier parole schemes applicable to persons having committed felonies on or after July 1, 1979, but before July 1, 1981; on or after July 1, 1981, but before July 1, 1984; and on or after July 1, 1984, but before July 1, 1985). With the repeal and reenactment of Article 22.5 in 1984, the general assembly chose not simply to amend the language of section 17-22.5-103 and recodify

it as it had done previously, *see, e.g.,* ch. 157, sec. 14, § 17-22.5-103, 1979 Colo. Sess. Laws 667, 668; ch. 197, sec. 3, § 17-22.5-103, 1981 Colo. Sess. Laws 942, 943, but rather to incorporate subprovisions reintroducing language from prior versions of the provision, separated on the basis of the periods to which the prior provisions applied. Ch. 126, sec. 1, § 17-22.5-303, 1984 Colo. Sess. Laws 517, 521-23.

easily harmonized, however, I would nevertheless be reluctant to find sex offenders exempt from mandatory parole because the consequences of any particular construction should be given due consideration in determining legislative intent, § 2-4-203, and I believe the statutes are susceptible of a construction that furthers the legislative intent.

Because I believe accepted aids to statutory construction, including those specifically prescribed by the legislature for the resolution of ambiguities in its enactments, lead to the conclusion that the legislature intended offenders like the defendant, convicted of sex offenses committed between July 1, 1993 and July 1, 1996, to be subject to the supervision of the parole board according to the provisions of section 18-1-105(1)(a)(V), I would affirm the decision of the court of appeals. I therefore respectfully dissent.

Justice KOURLIS and Justice RICE join in the dissent.